Argued and submitted March 10, affirmed July 28, 2010

Michelle K. FOSTER,
*Petitioner-Respondent,*

*v.*

Hector S. MIRAMONTES,
*Respondent-Appellant.*

Benton County Circuit Court
0510408; A138024

236 P3d 782

Andy Simrin argued the cause for appellant. With him on the brief was Andy Simrin PC.

Lorena M. Reynolds argued the cause for respondent. With her on the brief was The Reynolds Law Firm, PC.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Judge.

ROSENBLUM, J.

## ROSENBLUM, J.

Respondent in this civil stalking case appeals a general judgment entering a permanent stalking protective order (SPO) and a money award in favor of petitioner, and a supplemental judgment awarding petitioner her attorney fees. On appeal, respondent contends in his first assignment of error that the trial court erred when it conducted the trial in this case without a jury. In his second and third assignments of error, he asserts that the trial court erred by issuing the SPO and by awarding petitioner attorney fees. We reject respondent's second and third assignments of error without discussion and write only to address his contention that he was entitled to a jury trial. With respect to that issue, we conclude that the trial court correctly determined that respondent had no entitlement to a jury trial and, therefore, we affirm.

Petitioner filed a petition pursuant to ORS 30.866 seeking an SPO, money damages, and attorney fees. She alleged that respondent, who had been her coworker, had engaged in repeated unwanted contact with her that caused her reasonable apprehension regarding her safety. She requested a money award for her sick leave, annual leave, lost overtime compensation, and the cost of her counseling.

In light of petitioner's request for damages, respondent asserted to the trial court that he was constitutionally entitled to a jury trial. However, the court concluded "that the respondent is not entitled to a jury trial, that [ORS 30.866] when it was passed by the legislature created a new claim for relief." Accordingly, it denied respondent's request for a jury trial and the case was tried to the court.

On appeal, respondent contends that, because the petition sought an award of damages in this case, the trial court erred in "conducting [the] trial without empanelling a jury." Petitioner responds that an action pursuant to ORS 30.866 for an SPO, damages, or both, "is purely statutory and exists only in the form and with the limitations chosen by the legislature. The legislature did not provide for the right to a jury trial in ORS 30.866." Further, she asserts, because the statutory remedy she sought did not exist at the time of the adoption of the Oregon Constitution, respondent has no right to a jury trial. *Cf. Delgado v. Souders*, 334 Or 122, 140, 46

P3d 729 (2002) ("[T]he framers of the Oregon Constitution cannot be said to have contemplated specifically the entry of an SPO, as the legislature did not enact the anti-stalking statutes as a whole until 1993.").

■ In determining whether a statutorily based claim must be tried to a jury, we engage in a two-step inquiry. We must initially " 'determine whether the legislature intended by [the statute] to provide a trial by jury.' " *Dept. of Forestry v. Louisiana Pacific Corp.*, 166 Or App 205, 209, 999 P2d 487 (2000) (quoting *Goodyear Tire & Rubber Co. v. Tualatin Tire & Auto*, 322 Or 406, 414, 908 P2d 300 (1995), *modified on recons*, 325 Or 46, 53, 932 P2d 1141 (1997)) (alteration in *Louisiana Pacific Corp.*). If we determine that the legislature did not intend to provide a jury trial, we then evaluate whether " 'a jury trial nonetheless is required by Article I, section 17, or Article VII (Amended), section 3, of the Oregon Constitution.' " *Louisiana Pacific Corp.*, 166 Or App at 209 (quoting *Goodyear Tire & Rubber Co.*, 322 Or at 414).

■ Based on our review of the relevant statutory text and context,[1] *see State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), we conclude that the civil stalking statute does not confer a right to a jury trial. ORS 30.866 provides, in part:

"(1) A person may bring a civil action in a circuit court for a court's stalking protective order or for damages, or both, against a person if:

"(a) The person intentionally, knowingly or recklessly engages in repeated and unwanted contact with the other person or a member of that person's immediate family or household thereby alarming or coercing the other person;

"(b) It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

"(c) The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal

---

[1] We note that the parties have not referenced any legislative history on this issue.

safety of the victim or a member of the victim's immediate family or household.

"(2) At the time the petition is filed, the court, upon a finding of probable cause based on the allegations in the petition, shall enter a temporary court's stalking protective order that may include, but is not limited to, all contact listed in ORS 163.730. The petition and the temporary order shall be served upon the respondent with an order requiring the respondent to personally appear before the court to show cause why the temporary order should not be continued for an indefinite period.

"(3)(a) At the hearing, whether or not the respondent appears, the court may continue the hearing for up to 30 days or may proceed to enter a court's stalking protective order and take other action as provided in ORS 163.738.

"(b) If respondent fails to appear after being served as required by subsection (2) of this section, the court may issue a warrant of arrest as provided in ORS 133.110 in order to ensure the appearance of the respondent in court.

"(4) The plaintiff may recover:

"(a) Both special and general damages, including damages for emotional distress;

"(b) Punitive damages; and

"(c) Reasonable attorney fees and costs.

"* * * * *

"(8) The remedy provided by this section is in addition to any other remedy, civil or criminal, provided by law for the conduct giving rise to the claim."

ORS 30.866 does not contain any language expressly granting the right to a jury trial. Furthermore, the statute contains no reference that conveys any kind of indication that the legislature intended to confer a right to a jury trial. *See Goodyear Tire & Rubber Co.*, 322 Or at 415 (an express grant of a right to jury trial "is not necessary * * * as long as [the] legislative intent is clear").[2] In the absence of a clear

_____

[2] Pursuant to the Supreme Court's decision in *Goodyear Tire & Rubber Co.* and this court's decision in *Louisiana Pacific Corp.*, where a statute uses the term "action" (as opposed to "proceeding" or "suit") and those statutory references "antedate the enactment of the Oregon Rules of Civil Procedure, those references are

legislative intent reflected in the statute to provide for a jury trial in proceedings pursuant to ORS 30.866, we turn to the question of whether the Oregon Constitution, nevertheless, requires a jury trial in this type of case.

■ Article I, section 17, provides that "[i]n all civil cases the right of Trial by Jury shall remain inviolate." Article VII (Amended), section 3, provides, in relevant part, "In actions at law, where the value in controversy shall exceed $750, the right of trial by jury shall be preserved[.]" Article I, section 17, "is not a source of law that creates or retains a substantive claim or a theory of recovery in favor of any party." *Jensen v. Whitlow*, 334 Or 412, 422, 51 P3d 599 (2002). Furthermore, it does "not give [a party] a right to a jury trial in *all* civil matters." *Molodyh v. Truck Insurance Exchange*, 304 Or 290, 295, 744 P2d 992 (1987) (emphasis in original). Rather, reading the two constitutional provisions together, the Oregon Supreme Court has explained that the right to a jury trial is guaranteed "in those classes of cases in which the right [to a jury trial] was customary at the time the [Oregon] [C]onstitution was adopted or in cases of like nature." *McDowell Welding & Pipefitting, Inc. v. U. S. Gypsum Co.*, 345 Or 272, 279, 193 P3d 9 (2008) (alterations in original).

Here, respondent does not contend that petitioner's particular cause of action in this case is one that existed at the time that the Oregon Constitution was adopted. He concedes that the legislature enacted the relevant statute in 1993. *See* Or Laws 1993, ch 626, § 9. Instead, respondent asserts that he is entitled to a jury trial because a civil stalking claim pursuant to ORS 30.866 is "of like nature" to those causes of action for which a jury was guaranteed at the time that the Oregon Constitution was adopted.

---

strong evidence that the legislature intended to afford jury trials for claims arising under those statutes." *Louisiana Pacific Corp.*, 166 Or App at 213. However, "[on] the adoption of the ORCP in 1979, the legislature abolished many procedural distinctions between 'suits' and 'actions.' " *Goodyear Tire & Rubber Co.*, 322 Or at 415; *see* ORCP 2 ("There shall be one form of action known as a civil action."). ORS 30.866, which was enacted in 1993, postdates the ORCP by a significant margin. *See* Or Laws 1993, ch 626, § 9. Thus, although ORS 30.866 permits a person to bring "a civil action" for an SPO, damages, or both, the use of the term "a civil action" in the statute does not illuminate any underlying legislative intent to confer a right to a jury trial.

In *Hughes v. PeaceHealth*, 344 Or 142, 178 P3d 225 (2008), the Oregon Supreme Court analyzed a similar question. At issue in that case was whether the plaintiff had a right to have a jury determination on the issue of damages in a wrongful death action. The plaintiff argued that she had such a right pursuant to Article I, section 17, because "her wrongful death action [was] 'of like nature' to an ordinary common-law personal injury action." *Id.* at 155. The court rejected that assertion, explaining that the plaintiff's

> "expansive claim clearly conflicts with a principle that this court has often invoked in the context of recent cases arising under Article I, section 17—that Article I, section 17, is not a source of law that creates or retains a substantive claim or a theory of recovery in favor of any party. Under that rule, plaintiff is entitled to a jury's determination of her damages, both in type and amount, only to the extent that the substantive law, *i.e.*, the statute, pertaining to her claim so provides."

*Id.* (citation and internal quotation marks omitted). It noted that an action for wrongful death was not recognized in this state at the time the constitution was adopted. Instead, "wrongful death in Oregon is purely statutory[.]"[3] *Id.* at 156. Furthermore, at the time the Oregon Constitution was adopted,

> "there was no clear common-law tradition with respect to the necessary elements of a wrongful death action, or who might bring such an action, or what sorts of damages would be recoverable, should such an action be recognized. That is, * * * there was no common-law rule defining the damages for wrongful death at all, much less one that identified the amount that would compensate a plaintiff for injuries resulting from the wrongful act. The legislature therefore retained the authority to define the right to recover for wrongful death, the authority to decide who could recover,

---

[3] In *Hughes*, the court also distinguished the circumstances presented from those in *Lakin v. Senco Products, Inc.*, 329 Or 62, 987 P2d 463 (1999), in which the court concluded that "as applied in an ordinary common-law negligence action, [a cap on damages] violated Article I, section 17, because it interfered with a plaintiff's right to have a jury assess damages[.]" *Hughes*, 344 Or at 154. However, "the state of affairs with respect to [purely statutory] wrongful death actions is—and always has been—quite different from the common-law claim at issue in [*Lakin*]." *Hughes*, 344 Or at 155.

and the authority to establish the nature of the damages that were recoverable."

*Id.*

Here, respondent suggests petitioner's ORS 30.866 action is "of like nature" to common-law actions seeking damages for the torts of assault and battery[4] and, therefore, he is constitutionally entitled to a jury trial. We are not persuaded.

At common law, the torts of assault and battery consisted of the following elements: (1) an actor acts intending to cause a harmful or offensive touching with the person of another or a third person, or an imminent apprehension of such contact; and (2) a harmful or offensive contact with the person of the other directly or indirectly results (battery) or the other person is thereby put in such imminent apprehension (assault). *Restatement (Second) of Torts*, §§ 13, 18, 21 (1974).

■ In contrast, as noted, ORS 30.866 was enacted by the legislature in 1993; a civil action for stalking did not exist until that time. Thus, like in *Hughes*, there is no common-law tradition with respect to the elements of stalking, who might bring an action to recover for it, or what damages would be recoverable. The statutory claim for stalking pursuant to ORS 30.866 contains elements that are separate and distinct from those necessary for the torts of assault and battery. The elements of stalking are that the respondent (1) intentionally, knowingly, or recklessly engages in two or more unwanted contacts (2) with the petitioner or a member of the petitioner's immediate family or household (3) thereby

---

[4] We note that respondent also references the tort of intentional infliction of emotional distress. However, that tort was not recognized at common law at the time the Oregon Constitution was adopted. *Compare Restatement of Torts* § 46 (1934) ("[C]onduct which is intended or which not so intended is likely to cause only a mental or emotional disturbance to another does not subject the actor to liability (a) for emotional distress resulting therefrom, or (b) for bodily harm unexpectedly resulting from such disturbance."), *with Restatement (Second) of Torts* § 46 (1965) (describing tort for outrageous conduct causing extreme emotional disturbance). *See also* Archibald H. Throckmorton, *Damages for Fright*, 34 Harv L Rev 260 (1921); *Pakos v. Clark*, 253 Or 113, 453 P2d 682 (1969) (recognizing "outrageous conduct" as a tort in Oregon); *McGanty v. Staudenraus*, 321 Or 532, 544, 901 P2d 841 (1995) (observing that the Oregon Supreme Court first recognized "the predecessor to intentional infliction of severe emotional distress" in *Pakos*). Accordingly, we do not discuss it herein.

alarming or coercing the petitioner; (4) it is objectively reasonable for the petitioner to have been alarmed or coerced by the contact; and (5) the repeated and unwanted contact causes the petitioner reasonable apprehension regarding the personal safety of the petitioner or a member of the petitioner's immediate family or household. ORS 30.866(1); *Boyd v. Essin*, 170 Or App 509, 513-14, 12 P3d 1003 (2000), *rev den*, 331 Or 674 (2001) (civil stalking statute authorizes a court to issue an SPO against someone who engages in two or more unwanted contacts with another person and, thereby, alarms or coerces that person and causes the person reasonable apprehension regarding his or her personal safety or that of a member of his or her immediate family or household); *see also Soderholm v. Krueger*, 204 Or App 409, 418-20, 129 P3d 764 (2006) (discussing evidence required to establish subjective mental state of "alarm").

 Unlike in the case of battery, with a stalking claim, there need be no physical contact with the victim. Rather, the unwanted contact could consist of merely such things as "coming into [the victim's] visual or physical presence." *Delgado*, 334 Or at 137. Further, there need be no intent to actually harm or touch the victim or cause the victim imminent apprehension of such a touching; all that is required is that a respondent "at a minimum * * * subjectively must be aware of a substantial and unjustifiable risk that [his or her] contacts [with a particular person] are repeated and unwanted by the recipient, and then consciously and unreasonably disregard that risk." *Id.* at 133. And, again unlike assault or battery, the unwanted contacts that form the basis of a stalking claim may be with a person other than the petitioner; the statute specifies that a civil action for stalking may be based on contacts with members of the petitioner's immediate family or household.

In light of those distinctions, it is clear that the civil action for stalking created by ORS 30.866 is not merely an assault or battery claim by another name. Indeed, it is worth noting that the legislature specifically included within the text of the statute a provision that leaves intact existing claims (such as claims for assault and battery) that a victim might have as a result of the behavior that gave rise to the stalking case. ORS 30.866(8) ("The remedy provided by this

section is in addition to any other remedy, civil or criminal, provided by law for the conduct giving rise to the claim."). In light of those circumstances, we conclude that a claim for civil stalking is not "of like nature" to the common-law claims of assault or battery as respondent contends and, thus, respondent has not demonstrated that the trial court erred in denying his request for a trial by jury. *See also Delgado*, 334 Or at 139-41 (even if viewed as criminal in nature, the procedures set out in ORS 30.866 for obtaining an SPO are similar to historical proceedings to prevent a crime and, thus, fall within a historical exception to Article I, section 11; therefore, a respondent in such a case is not entitled to the constitutional safeguards set out in that provision, such as the right to a jury trial).

Affirmed.