**Filed: September 20, 2012**

IN THE SUPREME COURT OF THE STATE OF OREGON

M. K. F.,

Respondent on Review,

v.

HECTOR S. MIRAMONTES,

Petitioner on Review.

(CC 0510408; CA A138024; SC S058847)

En Banc

On review from the Court of Appeals.*

Argued and submitted March 6, 2012.

Andy Simrin, Andy Simrin PC, Portland, argued the cause and filed the briefs for petitioner on review.

Lorena M. Reynolds, The Reynolds Law Firm PC, Corvallis, argued the cause and filed the brief for respondent on review.

Cody Hoesly, Larkins Vacura LLP, Portland, filed a brief for *amicus curiae* Oregon Trial Lawyers Association.

Judy C. Lucas, Senior Assistant Attorney General, Salem, filed a brief for *amicus curiae* State of Oregon. With her on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

WALTERS, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed in part and reversed in part. The case is remanded to the circuit court for further proceedings.

*Appeal from Benton County Circuit Court, David B. Connell, Judge. 236 Or App 381, 236 P3d 782 (2010).

WALTERS, J.

In this case, we decide that, in an action under ORS 30.866 in which a plaintiff seeks both a stalking protective order and a judgment for compensatory money damages, the parties are entitled to a jury trial on the claim for money damages.

Plaintiff[1] filed a petition under ORS 30.866,[2] alleging that defendant had engaged in knowing and repeated unwanted sexual contact with her in the two years preceding the filing of the petition and that that contact had caused plaintiff reasonable apprehension regarding her safety. Plaintiff claimed that she was entitled to three forms of relief: a stalking protective order enjoining defendant from engaging in certain conduct; an award of compensatory damages for lost sick and annual leave, lost wages, and counseling expenses; and an award of reasonable attorney fees. Defendant asserted that he was entitled to a jury trial on plaintiff's claim for compensatory money damages. The trial court disagreed and conducted the trial on all three claims without a jury. The court found in favor of plaintiff, issued a stalking protective order, entered a general judgment for compensatory damages in the amount of $42,347.78, and entered a supplemental judgment for reasonable attorney fees.

---

[1] Plaintiff filed this case in the trial court. In that court, she referred to herself as the "petitioner" and to Miramontes as the "respondent." The parties have continued to use those references in the appeal process. However, because Miramontes is the party who filed the petition for review in this court and is also, therefore, a "petitioner," we choose to proceed differently. To avoid confusion, and in accordance with ORS 30.866, which refers to the party seeking damages under ORS 30.866 as the "plaintiff," we will refer, in the course of this opinion, to the initial plaintiff as "plaintiff" and to Miramontes as defendant.

[2] We set out relevant parts of ORS 30.866 later in this opinion.

Defendant appealed, raising three assignments of error, and the Court of Appeals affirmed. The court discussed only defendant's first assignment of error -- that the trial court had erred when it conducted the trial on plaintiff's claim for compensatory damages without a jury. *M. K. F. v. Miramontes*, 236 Or App 381, 383, 236 P3d 782 (2010).[3] The court held that defendant had neither a statutory nor a constitutional right to a jury trial. The court reasoned that the text of ORS 30.866 contains "no reference that conveys any kind of indication that the legislature intended to confer a right to a jury trial." *Id*. at 385. In the absence of such a clear legislative intent, the court considered whether the Oregon Constitution confers that right. The court stated that the relevant constitutional provisions applied only to "'those classes of cases in which the right [to a jury trial] was customary at the time the [Oregon] [C]onstitution was adopted or in cases of like nature.'" *Id.* at 386 (quoting *McDowell Welding & Pipefitting v. US Gypsum Co.*, 345 Or 272, 279, 193 P3d 9 (2008)) (alterations in original). The court concluded that this case does not fall within those classes of cases; a civil action for stalking did not exist when the Oregon Constitution was adopted, and it is "not merely an assault or battery claim by another name." *Id.* at 389.

We allowed defendant's petition for review, and we, too, discuss only the first issue that he raises -- whether he had a right to a jury trial on plaintiff's claim for compensatory money damages.[4] For the reasons that follow, we reverse the decision of

_____

[3] The Court of Appeals affirmed the other two assignments of error without discussion. *M. K. F. v. Miramontes,* 236 Or App 381, 383, 236 P3d 782 (2010).

[4] We reject without discussion defendant's second assignment of error -- that

2

the Court of Appeals on that issue and the judgment of the circuit court on plaintiff's claim for compensatory damages and remand this case to the circuit court for further proceedings.

Defendant rests his argument that he had a right to jury trial on plaintiff's claim for compensatory damages on Article I, section 17, and Article VII (Amended), section 3, of the Oregon Constitution. However, our decisional paradigm requires us first to consider whether the stalking statute itself guarantees defendant a jury trial on that claim. *Goodyear Tire & Rubber Co. v. Tualatin Tire & Auto*, 322 Or 406, 414, 908 P2d 300 (1995), *modified on recons*, 325 Or 46, 932 P2d 1141 (1997) (requiring resolution of statutory issue before constitutional issue in deciding existence of right to jury trial). We therefore turn to that question.

ORS 30.866, Oregon's civil stalking statute, provides, in part:

"(1) A person may bring a civil action in a circuit court for a court's stalking protective order or for damages, or both, against a person if:

"(a) The person intentionally, knowingly or recklessly engages in repeated and unwanted contact with the other person or a member of that person's immediate family or household thereby alarming or coercing the other person;

"(b) It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

"(c) The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household.

---

the trial court erred in issuing a stalking protective order because there was insufficient evidence under ORS 30.866 that defendant had engaged in two or more unwanted contacts, each of which were alarming or coercive.

"(2) At the time the petition is filed, the court, upon a finding of probable cause based on the allegations in the petition, shall enter a temporary court's stalking protective order that may include, but is not limited to, all contact listed in ORS 163.730.  * * *

"(3)(a) At the hearing, whether or not the respondent appears, the court may continue the hearing for up to 30 days or may proceed to enter a court's stalking protective order and take other action as provided in ORS 163.738.

"* * * * *

"(4) The plaintiff may recover:

"(a) Both special and general damages, including damages for emotional distress;

"(b) Punitive damages; and

"(c) Reasonable attorney fees and costs.

"* * * * *

"(8) The remedy provided by this section is in addition to any other remedy, civil or criminal, provided by law for the conduct giving rise to the claim.

"(9) No filing fee, service fee or hearing fee shall be charged for a proceeding under this section if a court's stalking order is the only relief sought."

Nothing in the wording of that statute expressly grants a right to a jury trial. Nor are we aware of any statutory context suggesting that the legislature intended to grant a right to jury trial to parties to a stalking damages claim.

In *Goodyear*, this court held that an express grant of a right to trial by jury is not necessary, as long as a legislative intent to provide one is clear.  322 Or at 415. The Oregon Trial Lawyers Association (OTLA), appearing as an *amicus curiae* in this proceeding, proffers legislative history that it contends provides that clear demonstration

4

of legislative intent. OTLA argues that the legislative history shows that the legislature intended stalking damages claims to be treated the same as other civil damages claims, which, in turn, suggests that the legislature intended stalking damages claims to be tried to a jury. OTLA points to the fact that the bill that ultimately became ORS 30.866 originally exempted all petitioners from filing fee requirements. Senate Bill (SB) 833 (1993). One legislator complained that petitioners seeking only civil damages for stalking should not be relieved of the usual expenses in pursuing a civil damages action. Tape Recording, Senate Committee on Judiciary, SB 833, May 4, 1993, Tape 140, Side A (statement of Senator Bob Shoemaker); Tape Recording, Senate Committee on Judiciary, SB 833, May 5, 1993, Tape 143, Side A (statement of Senator Bob Shoemaker). Thereafter, the bill was amended, and, as enacted, ORS 30.866(9) provides that "[n]o filing fee, service fee or hearing fee shall be charged for a proceeding under this section if a court's stalking order is the only relief sought." As a consequence of that amendment, parties pursuing claims for money damages in a stalking case were not relieved of the obligation to pay the statutory fees. According to OTLA, because stalking damages claims are treated like ordinary civil damages claims when it comes to statutory fees, and ordinary civil damages claims are tried to juries, it is reasonable to infer that the legislature intended for stalking damages claims also to be tried to juries.

That chain of inferences does not lead us to the conclusion that OTLA wishes us to draw. Although the legislature may have contemplated that, like most civil damage claims, a stalking damages claim would be tried to a jury, the legislature did not express that intent. The legislature plainly did decide that a party seeking only a stalking

5

protective order would not have to pay filing fees, while a party seeking additional relief, such as money damages, would. However, the most that we can draw from the legislative history is that it, like the statute, is silent as to whether the legislature intended to confer a right to jury trial in a stalking damages claim. We therefore turn to whether the Oregon Constitution requires a jury trial of plaintiff's claim for compensatory damages.

Article I, section 17, provides that, "[i]n all civil cases the right of Trial by Jury shall remain inviolate." Article VII (Amended), section 3, provides, in part, that, "[i]n actions at law, where the value in controversy shall exceed $750, the right of trial by jury shall be preserved." Defendant argues that plaintiff filed a civil case that included a legal claim in which the value in controversy exceeded $750. Therefore, defendant asserts, he is entitled to a jury trial on that legal claim.

Plaintiff counters with two related but alternative arguments, both of which are based on this court's pronouncement in *State v. 1920 Studebaker Touring Car et al.*, 120 Or 254, 263, 251 P 701 (1927), that the right to a jury trial in a civil case is guaranteed not only in those cases in which the right was customary at the time the constitution was adopted, "but is to be extended to cases of like nature as they may hereafter arise." The first is that there is no constitutional right to a jury trial on a claim under ORS 30.866, because it is a newly created statutory claim, providing entirely new remedies, and, therefore, it is not "of like nature" to any claim known at common law and triable to a jury then. The second is that, even if the constitutional right to jury trial can attach to a newly created statutory claim with no historical antecedent in the common

6

law, it does not attach to this claim, because a claim under ORS 30.866 is, in essence, a claim in equity. Plaintiff contends that the constitutional right to a jury trial does not extend to equitable claims, because, at the time of the Oregon Constitution's adoption in 1857, those claims would have been tried to the court without a jury.

We begin with the constitutional provisions that provide a right to jury trial. As noted, Article I, section 17, provides that the right to a jury trial shall remain inviolate in "*all civil cases*," and Article VII (Amended), section 3, provides a right to jury trial in "*actions at law, where the value in controversy shall exceed $750.*" (Emphases added.) In 1927, in *Studebaker*, the court considered the reach of those phrases and rejected the argument that no right to a jury trial attaches to a claim unless there was a firmly established common-law right to a jury trial for that claim in 1857.[5] In that case, the court considered the constitutionality of a statute that had been enacted in 1923 and that created a new proceeding *in rem* against property used in violation of law. That statute prohibited the use of a car to transport liquor and provided for the forfeiture of any car used for that purpose. Under the statute, the matter was to be adjudicated by a judge rather than by a jury. The owner of the forfeited property contended that that procedure violated her constitutional right to a jury trial. In resolving that issue, the court rejected the contention that, because the forfeiture statute at issue was enacted after the adoption

---

[5] Article I, section 17, was included in the Oregon Constitution when it was adopted in 1857. Article VII (Amended), section 3, was adopted when the constitution was amended in 1910. Because this case does not turn on the difference in those two provisions or the dates on which they were adopted, we simplify our discussion by referencing only the earlier date -- 1857.

7

of the constitution, the legislature was free to dispose of cases under it in any way it saw fit:

> "It is argued that these proceedings concern matters in respect to prohibitory laws enacted since the adoption of the Constitution, and for that reason are not within the guarantee of the Constitution, and that controversies concerning violations of them may be disposed of by the courts in any manner the legislature sees fit to adopt. The answer to this contention is, that the constitutional right of trial by jury is not to be narrowly construed, and is not limited strictly to those cases in which it had existed before the adoption of the Constitution, but is to be extended to cases of like nature as they may hereafter arise."

*Id.* at 263. Thus, the court in *Studebaker* held that the relevant inquiry is not whether a newly created statutory claim existed at common law, but whether, because of its nature, it falls "within the guarantee of the Constitution" to a jury trial. *Id.*

The cases that followed *Studebaker* also looked beyond the "new" status of a claim, and they began to flesh out what kind of case, because of its "nature," requires a jury trial. In *In re Idleman's Commitment*, 146 Or 13, 27 P2d 305 (1933), for example, the court held that a newly created statutory proceeding to require the estate and/or relatives of "insane and feeble-minded persons" to reimburse the state for the cost of their care and maintenance did not carry a right to jury trial. The court observed that such a proceeding and such an obligation did not exist at common law, but it did not rely on that observation in holding that the statute did not violate the defendant's constitutional right to jury trial. Rather, the court noted that proceedings to determine lunacy and appoint guardians for incompetents were tried to the court at common law and that it had held that probate proceedings were not "civil cases" within the contemplation of the constitutional jury trial provision. *Id.* at 29-30. The court concluded that it was evident

8

that,

> "in proceedings of the character now before us[,] trial by jury was not available at the time of the enactment of our constitution."

*Id.* at 30; *accord Mallatt v. Luihn et al.*, 206 Or 678, 695, 294 P2d 871 (1956) (statute directing that proceeding to require relatives to contribute to the state's support of "needy persons" proceed as a suit in equity did not violate right to jury trial, because facts involved in such proceeding were not triable by jury at time of adoption of constitution).

In *Molodyh v. Truck Insurance Exchange*, 304 Or 290, 744 P2d 992 (1987), this court followed a similar analysis to conclude that the plaintiff was constitutionally entitled to a jury trial. The statute at issue in *Molodyh* provided for appraisal, in lieu of a jury trial, to determine the amount of an insured's damages in a contract action on an insurance policy. The court observed that, in contract actions, juries had traditionally determined whether a breach of contract had occurred and the consequent amount of damages to be awarded. *Id.* at 296. Because the court could find neither legislative antecedent nor case law to support the defendants' argument for "an historical exception" for appraisals, it held that, "as long as this form of dispute is tried as an action at law, a jury trial is required." *Id.* at 297.

Plaintiff contends that this court has consistently held that there is no right to a jury trial for newly created statutory claims that provide new, previously unavailable, remedies. Plaintiff cites a number of cases for our consideration, but, in all but four of those cases, the claims at issue either were recognized and triable to a court at common law or, like those considered in *In re Idleman's Commitment* and *Mallatt*, were of such a

9

nature that they would have been tried to the court at common law.[6] Three of the remaining cases merit further discussion.[7]

The first of those is *Cornelison v. Seabold*, 254 Or 401, 460 P2d 1009 (1969). In that case, an employee who had been injured at work when a water tank then under construction fell on him sued his employer and the designers of the tank. The defendants filed supplemental answers, alleging that the employee's sole remedy was that provided by the workers' compensation statute. The workers' compensation statute provided, among other things, that the question whether a particular injury was covered

---

[6] *Kendall v. Post*, 8 Or 141 (1879), was an eminent domain action, in which property was taken for public use. The court held that the common law never had granted a right to jury trial in such cases. In *Dean v. Willamette Bridge Co.*, 22 Or 167, 29 P 440 (1892), the court held that a statute directing the court, without a jury, to assess damages in cases of default was constitutional, because, at common law, there was no right to jury trial in default proceedings. *Moore Mill & Lbr. Co. v. Foster*, 216 Or 204, 336 P2d 39 (1959) was another eminent domain case, but it involved a new statutory use of the power. There, the court again held that a jury trial was not employed at common law in proceedings in eminent domain. In *State ex rel Hathaway v. Hart*, 300 Or 231, 708 P2d 1137 (1985), a statute provided for criminal contempt proceedings for restraining order violations to be tried to a court without a jury. The court held that there was no constitutional right to a jury trial in such a case, because restraining orders, although unknown at common law, were analogous to traditional injunctions, and, historically, courts could punish violations of such orders through contempt proceedings, which, by the time the Oregon Constitution was adopted, were disposed of without jury trials. Finally, *McDowell*, 345 Or 272, involved a contract claim in which the plaintiff sought specific performance and the defendant asserted an affirmative defense that was also equitable in nature. The court held that there was no right to jury trial of those equitable claims because they would have been tried to a court at common law.

[7] We do not discuss one case that plaintiff cites that does involve a claim of a nature that would have required a jury trial at common law, because it is a Court of Appeals case that is not binding on this court. *[Voth v. State of Oregon](#)*, 190 Or App 154, 78 P3d 565 (2003). The Court of Appeals in *Voth* held that there was no right to a jury trial in a tort action brought by an inmate against the state because, at common law, the state would have been immune from such claims entirely.

10

under that scheme was itself an issue triable to a court without a jury. The employee contended that that provision violated his constitutional right to a jury trial because the overall claim was, in essence, one for damages for personal injuries.[8] The court acknowledged that a claim for personal injuries was "known to the common law" and at common law would have been tried to a jury, but, after observing that workers' compensation is a creation of the legislature and not the common law, the court concluded that "it should be the nature of the particular issue in the proceeding, rather than that of the entire proceeding, which should dictate whether this issue is to be tried with or without a jury." *Id.* at 406.

The "particular issue" that the supplemental answers presented and on which the plaintiff claimed a right to jury trial was a preliminary question of law -- whether the workers' compensation statute applied to the employee's claim and provided his sole remedy. Given that questions of law generally are the province of judges and not of juries, *Glaze v. Whitley*, 5 Or 164, 168 (1874) (so stating), it is not surprising that the court in *Cornelison* decided that the employee did not have a constitutional right to have a jury decide the legal question at issue in that case. Although plaintiff reads *Cornelison* as holding that there is no right to a jury trial for *claims* that did not exist at common law, the court, in fact, was quite clear that it was focusing not on the nature of the overall

---

[8]     The employee in *Cornelison* did not contend that, if his injury were covered by the workers' compensation statutes, then he had a right to have a jury, rather than an administrative law judge, decide his claim for the compensation that those statutes provide. Instead, the only issue before the court in that case was whether the employee was entitled to a jury trial on the narrow issue of whether his injury was covered by those statutes.

11

claim but on the nature of the *particular issue presented.* 254 Or at 406. To read *Cornelison* as plaintiff suggests would create a conflict between *Cornelison* and *Studebaker,* which the court in *Cornelison* cited but did not overrule. 254 Or at 405-06. Because *Studebaker* holds that the right to jury trial is not limited to claims that were cognizable at common law, *Cornelison* is properly understood as standing only for the narrow proposition that a statute that permits a court to decide the preliminary legal question of the applicability of the procedure that it creates is not unconstitutional.

The other two cases that plaintiff cites and that merit further discussion are *Greist v. Phillips*, 322 Or 281, 906 P2d 789 (1995), and *Hughes v. PeaceHealth,* 344 Or 142, 178 P3d 225 (2008). Both *Greist* and *Hughes* are cases in which the plaintiffs sought damages for the wrongful death of decedents. The question presented in those cases was the constitutionality of a statute that limited the damages that the plaintiffs could recover. In *Greist*, the plaintiff argued that application of the statutory damages cap violated her right to a jury trial as provided in Article I, section 17, and Article VII (Amended), section 3. The plaintiff reasoned that the right to a jury trial means that the jury must decide the facts, including the amount of damages to be awarded. The plaintiff acknowledged that a wrongful death action was not cognizable at common law, but argued that a wrongful death action is "of like nature" to a personal injury action, to which a right to a jury trial clearly attaches. The court in *Greist* held that, even if the plaintiff were correct in that regard, the statutory damages cap still would be constitutional, because,

"[w]hen Article I, section 17, and the constitution were adopted, a jury's

12

determination of the amount of damages to be awarded in tort actions was not protected from judicial alteration."

322 Or at 294.

In *Hughes*, the court reconsidered that rationale. The court acknowledged that it had erred in its understanding of the extent of a court's authority, in 1857, to modify a damage award, but nevertheless adhered to the result that it had reached in *Greist*. The court explained that, in 1857, there was no common-law rule that defined the elements of a claim for wrongful death or the damages that were recoverable in such an action. Therefore, the court held, the legislature retained the authority to define the right to recover for wrongful death, including the authority to establish the nature and amount of the damages that were recoverable. *Hughes*, 344 Or at 156. Thus, the court concluded,

"Because the common law does not, and did not in 1857, recognize a right to unlimited damages in wrongful death actions, the only relevant source of substantive law respecting damages is the statutory law, which expressly places a cap on noneconomic damages. Thus, *any right to a jury trial that plaintiff might have under Article I, section 17*, cannot confer a right to a jury award of a kind or amount of damages that is contrary to that *statutory law*."

*Id.* at 156-57 (first emphasis added, second emphasis in original).

With regard to the right to jury trial, the court specifically noted that the parties had tried their case to a jury and that it was not deciding the "separate question" of whether they were constitutionally entitled to do so.[9] *Id.* at 156 n 12. The parties in *Greist* also had tried their case to a jury and had not raised the issue of whether the

---

[9] The court also observed that, as far as it was aware, wrongful death actions in Oregon always have been tried to a jury. *Hughes*, 344 Or at 156 n 12.

13

constitution entitled them to do so. Therefore, neither *Greist* nor *Hughes* stands for the proposition that there is no right to a jury trial in a statutory action that did not exist at common law.

In summary, our cases do not support plaintiff's argument that newly created statutory claims that provide new remedies necessarily are not "of like nature" to any claim known at common law and, for that reason, are not triable to a jury. We therefore reject that argument. The question still remains, however, whether plaintiff's claim for damages in her civil stalking case is "of like nature" to claims that were triable to a jury at common law.

The parties appear to agree that, if plaintiff had sought *only* money damages under ORS 30.866 -- that is, had she not combined her claim for money damages with a claim for a stalking protective order -- then her claim would have been at law and the right to jury trial would have attached. We concur. A claim seeking only monetary compensation for injuries inflicted is an "action at law," and the constitution, by its terms, preserves the right to jury trial for such legal claims. *See Fleischner v. Citizens' Real Estate & Inv. Co.*, 25 Or 119, 130, 35 P 174 (1893) (where the complaint is for compensation for injury caused, the remedy is an action at law); *Carey v. Hays*, 243 Or 73, 77, 409 P2d 899 (1966) (claim is at law if relief sought is a certain sum of money); *Molodyh*, 304 Or at 297 (contract dispute tried as action at law requires jury trial); *Thompson v. Coughlin,* 329 Or 630, 637-38, 997 P2d 191 (2000) (right to jury trial attaches to legal claim for specified sum of money).

Of course, plaintiff in this case also sought a stalking protective order, a

14

form of injunctive relief, which is equitable in nature. *See Swett v. Bradbury*, 335 Or 378, 386, 387, 67 P3d 391 (2003) (injunction is equitable remedy). Plaintiff asserts, and defendant agrees, that if plaintiff had sought only injunctive relief, her claim would have been equitable in nature, and the constitution would not provide a right to jury trial. Again we concur. There is no right to jury trial of equitable claims. *McDowell,* 345 Or at 284-86.

The problem that this case presents and that plaintiff addresses in her second argument is whether the right to jury trial attaches in a case in which a party seeks both legal and equitable relief. Plaintiff argues that her claim under ORS 30.866 is, in essence, a claim in equity and is, therefore, not "of like nature" to claims to which the right of jury trial attached at common law. Plaintiff contends that, because the legislature adopted ORS 30.866 to prevent and enjoin acts of stalking, all claims that a plaintiff files pursuant to that statute are essentially equitable in nature. Said another way, plaintiff contends that the overall "gist" of this case is equitable, and there is no constitutional right to jury trial of any part of it.

Defendant argues that the correct mode of analysis is not to determine the overall "gist" of plaintiff's claim but to separately determine the nature of each claim or request for relief. According to defendant, plaintiff's equitable claim or request for equitable relief may be tried to the court, but her legal claim or request for legal relief must be tried to a jury.

To analyze the parties' arguments, we find it helpful to understand the origins of the distinction between law and equity and the procedural differences to which

that distinction gave rise. The law/equity dichotomy is rooted in the separate development of the common law courts and the chancery court in England. As early as 1250, the English Chancellor began to provide litigants with assistance because of the inflexibility of the rules and procedures used by the existing English common law courts. By 1600, that practice developed into an entirely separate equity court, which applied a separate body of substantive law permitting more flexible remedies. Because of that differing function, the chancery court developed a completely different procedural system. Frederic R. Merrill, *Abolishing Procedural Distinctions Between Actions At Law and Suits in Equity; Right to Jury Trial, ORCP 2*, in Oregon Law Institute, 1980 Civil Procedure Rules 224 (1979). Under that procedural system, the chancery court decided the cases over which it had jurisdiction without a jury. Robert Wyness Millar, *Civil Procedure in the Trial Court in Historical Perspective* 23-26 (1952).

In America, some English colonies (and, later, states) also set up separate courts of law and equity, while others had one court with two different "sides" and two different sets of procedures. "All retained a fairly clear distinction between law and equity. This was required by the fact that the common law system of forms of action could not function without the separation, and common law procedure was so technical that it was inappropriate for equity." Merrill, *Abolishing Procedural Distinctions* at 224. After the American Revolution, federal law did not provide for separate courts of law and courts of chancery, but made a distinction between the law and equity "sides" of the court. Millar, *Civil Procedure* at 39.

When the question arose in both federal and state courts as to whether the

constitutional right to jury trial[10] applied to cases brought in the equity courts or on the equity "side" of the courts, the United States Supreme Court and the supreme courts of many states held that it did not. Dan B. Dobbs, 1 *Dobbs' Law of Remedies* § 2.6(2), 153 (2d ed 1993). As a result, cases properly brought in equity courts or by courts exercising equitable jurisdiction were tried by judges and not by juries. *Id.* When a plaintiff correctly filed a case in equity, but also asserted claims or sought remedies that were legal in nature, equity courts sometimes assumed jurisdiction over all the issues in the case, on the ground that the legal issues fell within its jurisdiction to decide "incidental" legal issues. Dobbs, 1 *Dobbs' Law of Remedies* § 2.6(4) at 169. That is, if the equity court concluded that the gist or the essence of the case was equitable, then it decided the whole case. *Id.*

In 1938, the Federal Rules of Civil Procedure (FRCP) abolished the division between cases filed in law and those filed in equity and provided for only one form of action -- the civil action.[11] FRCP 18(a) permitted joinder of legal and equitable

---

[10]    The Seventh Amendment to the United States Constitution provides a right to a jury trial in civil cases:

> "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."

[11]    As originally adopted, FRCP 2 provided:

> "There shall be one form of action to be known as 'civil action.'"

FRCP 2 (1938). That wording is unchanged in substance today:

> "There is one form of action -- the civil action."

17

claims in the same action.[12]  That turn of events required courts to address the right to jury trial under that new circumstance, and courts and scholars suggested various different ways to do so:

> "It was suggested variously that the whole case should be labeled as 'basically legal' or 'basically equitable,' or that the court should be guided by the plaintiff's preferred remedy, or should resort to history for guidance as to which party could have controlled whether the case would have gone to a jury under the old practice, or should identify a certain issue as 'basic' and the right to a jury trial made to turn on its characteristics."

Wright and Miller, *Federal Practice & Procedure: Civil* § 2306, 128 (3d ed 2008).

The United States Supreme Court settled on a mode of analysis for use in the federal courts in *Dairy Queen v. Wood*, 369 US 469, 82 S Ct 894, 8 L Ed 2d 44 (1962).  In *Dairy Queen*, the plaintiff sought an accounting for an alleged trademark infringement and requested both monetary and injunctive relief.  The Court focused on the nature of the relief requested and recognized that the plaintiff's request for a money judgment raised an issue that was unquestionably legal.  Therefore, the Court stated, it

---

FRCP 2.

[12]    As originally adopted, FRCP 18 provided, in part:

"The plaintiff in his complaint or in a reply setting forth a counterclaim and the defendant in an answer setting forth a counterclaim may join either as independent or as alternative claims as many claims either legal or equitable or both as he may have against an opposing party."

FRCP 18(a) (1938).  That wording is unchanged in substance today:

"A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party."

FRCP 18(a).

18

could not classify the case as "purely equitable."  369 US at 477-80.  The Court also held that the parties had a right to a jury trial on the legal issue even if the evident equitable issues were the "basic" issues or the legal issue could be characterized as "incidental" to the equitable issues.[13]  *Id.* at 470.  Moreover, to protect that right, the Court explained, the legal issue must be determined prior to final resolution of the equitable issues.  In that regard, quoting from its decision in *Beacon Theatres, Inc. v. Westover*, 359 US 500, 510-11, 79 S Ct 948, 3 L Ed 2d 988 (1959), the Court held that "'only under the most imperative circumstances * * * can the right to a jury trial of legal issues be lost through prior determination of equitable claims.'"  *Dairy Queen*, 369 US at 472-73.[14]  Thus, the Supreme Court's decision in *Dairy Queen* is completely at odds with the suggestion that,

---

[13]      Indeed, the Court squarely rejected the notion that a court in equity could decide a legal issue without a jury if that legal issue was "incidental" to the equitable issue:

> "It is therefore immaterial that the case at bar contains a stronger basis for equitable relief than was present in *Beacon Theatres*[, 359 US 500, 79 S Ct 948, 3 L Ed 2d 988 (1959)].  It would make no difference if the equitable cause clearly outweighed the legal cause so that the basic issue of the case taken as a whole is equitable.  As long as any legal cause is involved the jury rights it creates control.  This is the teaching of *Beacon Theatres*, as we construe it."

*Dairy Queen*, 369 US at 473 n 8.

[14]      The Supreme Court has adhered to that approach.  *See, e.g.*, *Tull v. United States*, 481 US 412, 425, 107 S Ct 1831, 95 L Ed 2d 365 (1987) (in suit under Clean Water Act, which included both legal and equitable claims, right to jury trial prevailed; right "cannot be abridged by characterizing the legal claim as 'incidental' to the equitable relief sought"); *Ross v. Bernhard*, 396 US 531, 538, 90 S Ct 733, 24 L Ed 2d 729 (1970) (plaintiff had right to jury trial on claim for damages in shareholder derivative suit, which was statutory action unknown at common law with historical antecedents in equity; that right "must not be infringed either by trying the legal issues as incidental to the equitable ones or by a court trial of a common issue existing between the claims").

19

in cases involving mixed issues of law and equity, a court should decide the right to jury trial based on an historical analysis of whether the case as a whole would have been tried at law or in equity when the constitution was enacted.[15]

State courts, of course, are not required to follow *Dairy Queen* to decide whether there is a state constitutional right to jury trial in cases in which a plaintiff seeks both legal and equitable remedies. State courts have adopted varying approaches:

> "Some states have accepted the *Dairy Queen* idea for at least some mixed equity-law claims, or at least have cited cases in the *Dairy Queen* line with a degree of tacit or explicit approval. Others historically used incidental jurisdiction theories to try the entire case as an 'equity' case and continue to state the incidental or clean-up jurisdiction approach or to decide ad hoc on the order of trial of the two claims."

Dobbs, 1 *Dobbs' Law of Remedies* § 2.6(4) at 172-73 (footnotes omitted).

Our review of the development of the distinction between law and equity discloses that the positions of the parties in this case split according to their acceptance of the *Diary Queen* approach. Plaintiff effectively rejects *Dairy Queen*, arguing that her claim for monetary relief is "incidental" to what is essentially an equitable claim and that, because Oregon permitted a court trial of such incidental requests in 1857, it should continue to do so. Defendant argues for a *Dairy Queen* approach that permits a judge to decide equitable claims and requests for equitable relief but that requires a jury to decide legal claims and requests for legal relief.

To assess the parties' arguments, we again find it helpful to trace the

---

[15] In fact, later the Supreme Court explicitly stated, "The Seventh Amendment question depends on the nature of the issue to be tried rather than the character of the overall action." *Ross v. Bernhard*, 396 US at 538.

20

distinction between law and equity, but now focus on how that distinction developed in Oregon. Oregon's territorial code and its first state procedural code included separate procedures for "actions at law" and "suits in equity." Merrill, *Abolishing Procedural Distinctions* at 225. As noted, equitable proceedings were tried to courts without juries and this court has held that the procedure is constitutional.

In *Fleischner*, 25 Or 119, the court considered whether the right to jury trial attached when a party sought money damages in a case that was otherwise equitable in nature. There, the plaintiff filed suit in equity seeking both to enjoin a nuisance and obtain an award of money damages. The defendant contended that a newly enacted statute that permitted a plaintiff to file an action at law to obtain those remedies furnished a complete and adequate remedy at law and, therefore, that the court of equity was without jurisdiction to act. This court disagreed, explaining that courts of equity had concurrent jurisdiction to entertain suits to enjoin nuisances and that the new statute did not deprive them of that authority. The court then considered the authority of courts of equity to award monetary damages notwithstanding the right to a jury trial under Article I, section 17, of the Oregon Constitution. The court observed that, to "prevent the circuity and expense of a trial in equity for an injunction and at law for damages," and perhaps on the theory that a plaintiff who files a claim in equity waives the tort, the "English rule" permitted courts of equity to decide the equitable issue, and, because the equity court could not order an award of damages, that court would substitute an account of the defendant's profits. *Id.* at 130. The court stated, however, that the better, although not universal, rule was that,

21

"if a court of equity acquires either exclusive or concurrent jurisdiction it may go on to complete adjudication, and establish purely legal rights and grant legal remedies, which would otherwise be beyond the scope of its authority."

*Id.* at 131. Based on that reasoning, the court concluded that a court of equity had jurisdiction to both abate the nuisance and award incidental monetary relief, and could do so without violating the constitutional right to jury trial. *Id.* at 132. Thus, in *Fleischner*, the court applied the "incidental" jurisdiction approach that was common at that time.

Nearly 80 years later, in *Mayer v. First National Bank of Oregon*, 260 Or 119, 134-36, 489 P2d 385 (1971), the court relied on waiver principles in deciding that a plaintiff who had improperly joined legal and equitable claims had no right to a jury trial of the legal claims. In *Mayer*, the plaintiff had invoked the aid of a court of equity to establish his equitable right of subrogation, but he also had joined a claim that he characterized as purely legal -- a claim for money had and received. The trial court denied the plaintiff's request for a jury trial on the claim for money had and received, and this court affirmed. The court held that, because the plaintiff had improperly joined the two claims, the situation in which he found himself was of his own making, and he would not be heard to complain. 260 Or at 135. The court noted, however, that a different rule pertained in federal courts, where law and equity had been merged. In the federal courts, this court observed,

"[c]ases involving both legal and equitable causes are common, and plaintiffs in such cases are entitled to a jury determination of the legal causes."

*Id*. at 135-36 (citing *Dairy Queen* and other federal cases).

22

Soon thereafter, the Oregon legislature adopted the Oregon Rules of Civil Procedure (ORCP) and dispensed with the procedural distinctions between law and equity.[16] ORCP 2 provided, and still provides:

> "There shall be one form of action known as a civil action. All procedural distinctions between actions at law and suits in equity are hereby abolished, except for those distinctions specifically provided for by these rules, by statute, or by the Constitution of this state."

ORCP 24 A permitted and still permits joinder of legal and equitable claims and defenses in one action:

> "A plaintiff may join in a complaint, either as independent or as alternate claims, as many claims, legal or equitable, as the plaintiff has against an opposing party."

In drafting those rules, the Council on Court Procedures recognized that the merger of law and equity could not affect the constitutional right to jury trial. Memorandum of Frederic Merrill to Council on Court Procedures, *Distinction Between Law and Equity*, Nov 29, 1977. In adopting ORCP 50, the legislature made clear its intent to preserve the right to a jury trial. ORCP 50 provided and still provides:

> "The right of trial by jury as declared by the Oregon Constitution or as given by a statute shall be preserved to the parties inviolate."

In his 1980 Oregon Law Institute article, *Abolishing Procedural Distinctions Between Actions at Law and Suits in Equity*, Merrill discussed how the substantive constitutional right to a jury trial would be determined under the new procedural regime, and wrote,

---

[16] The Oregon legislature adopted the Rules of Civil Procedure in 1979, Or Laws 1979, ch 284, and, at that time, abolished many of the procedural distinctions between suits in equity and actions at law. *Goodyear*, 322 Or at 415-16 (so explaining).

"Under our modern system, elements are incorporated into one case which historically would have required separate cases in law and equity. The availability of jury trial must be separately determined for different issues when a case arises presenting both legal and equitable issues. * * * Some issues in the same case may involve a right to jury trial while others do not."

Merrill, *Abolishing Procedural Distinctions* at 227. Merrill noted that, when both equitable and legal issues arise in the same case, the order in which those issues are decided could have constitutional implications. In that regard, Merrill cited *Dairy Queen* and *Beacon Theatres* and cautioned that

"some care is necessary in order of trial in mixed law and equity cases because of the constitutional right to jury trial. If there are overlapping factual issues between a legal claim and an equitable defense * * *, having the court pass on the defense first would settle those factual issues and bind the jury. If under the historical test the plaintiff actually would have been able to maintain an action at law and have the jury pass on those factual issues, the result may be a denial of the right to jury trial. * * * The question of order of trial should not be allowed to obscure the question of right to jury trial."

*Id.* at 227.

Although Merrill thus believed that Oregon should adopt a *Dairy Queen*-like approach, under which a party's right to jury trial is determined on an issue-by-issue basis, this court has not, until now, decided that question. The cases that the court has decided after the adoption of the Oregon Rules of Civil Procedure do not, however, foreclose that approach.

In the first relevant case, *Rexnord, Inc. v. Ferris,* 294 Or 392, 657 P2d 673 (1983), the plaintiffs joined claims for injunctive relief, compensatory damages, and punitive damages. The plaintiffs tried the case to the court, and the court granted the

24

injunction and awarded compensatory damages. The court also found that the plaintiffs had proved tortious conduct that would have supported an award of punitive damages, but it refused to award those damages, because, in an earlier case, this court had held that a party who seeks injunctive relief cannot also obtain, from the same court, an award of punitive damages. The plaintiffs appealed, and, on review, this court overruled that prior decision, holding that the then-newly adopted Rules of Civil Procedure permitted joinder of legal and equitable claims and that, if a party pleads and proves the right to recover punitive damages, joinder of a request for injunctive relief does not prevent a court from awarding both punitive damages and injunctive relief. *Id.* at 395-96.

The court also considered but rejected on preservation grounds the defendants' argument that they were entitled to a jury trial on the plaintiff's punitive damages claim. The court concluded that the defendants had waived their right to a jury trial by failing to raise the issue until after the trial court had made its factual findings and determined that a punitive damages award would not be appropriate. 294 Or at 402. In its discussion of that issue, the court quoted both Merrill's citation to *Dairy Queen* and his caution that the order of trial should not be allowed to obscure the question of right to jury trial. *Id.* at 402 n 4. The court stopped short of expressly adopting the federal approach, however, and stated that its holding was not intended to restrict a court of equity from awarding equitable compensation "when equitable relief is, for some reason, impossible or when damages are incidental to the equitable relief sought." *Id.*

In the next case that raised a related issue, *Thompson*, 329 Or 630, the plaintiff and the defendants were partners in an insurance business and, on dissolution of

the partnership, the plaintiff sought an accounting and a money judgment for commissions under Oregon's Uniform Partnership Act. In deciding whether the parties had a right to jury trial in that statutory proceeding, the court first noted that, generally, at common law, jurisdiction for partnership accountings lay in equity because of the inconvenience of examining complicated, long-standing accounts, the confidential relationship between the partners, and the necessity of discovery. Also, at common law, it was generally established that an equitable accounting was a condition precedent to an action in law between partners. However, the court reasoned, "[a]lthough an action such as an accounting was 'originally only cognizable in equity,' an action nonetheless could be maintained in law 'if the relief sought can adequately be given at law.'" 329 Or at 637 (quoting *Carey*, 243 Or at 77). Thus, the court concluded, the determination whether jurisdiction of an action lay in law or equity required an examination of the nature of the relief sought in the complaint. *Id.* at 637-38. In that case, because the plaintiff sought a judgment for a specified sum of money determinable without an accounting, the court decided that the plaintiff sought legal relief, and it held that the trial court had erred in denying the defendants' demand for a jury trial. *Id.* at 640.

Finally, in *McDowell*, 345 Or 272, a plaintiff sued for breach of a contract, alleging that the defendants had failed to pay for work that the plaintiff had done on a construction project. The defendants denied that allegation and alleged, as an affirmative defense, that the plaintiff had entered into a settlement agreement in which it had agreed to release its claims against the defendants in exchange for a payment of money. The defendants also counterclaimed for specific performance of the settlement agreement.

26

The trial court agreed to bifurcate the proceedings and try the defendants' counterclaim before trying the plaintiff's breach of contract claim. Thereafter, the plaintiff requested a jury trial on the defendants' counterclaim and on their affirmative defense; the trial court struck that request and, ultimately, sitting as trier of fact, found that the plaintiff had accepted the defendants' offer to settle its claims in return for a sum of money.

On review, this court relied on *Thompson* for the proposition that it must look to the pleadings and the relief sought to decide whether the plaintiff was entitled to a jury trial on the counterclaim or affirmative defense. *McDowell*, 345 Or at 279. The court determined that, because both the affirmative defense of release and the counterclaim for specific performance were equitable in nature, the plaintiff was not entitled to a jury trial on the factual issues that they raised. *Id.* at 284-86.

Thus, in *Thompson* and *McDowell*, the court looked to the nature of the relief sought and recognized a constitutional right to jury trial for claims or defenses that sought legal, as opposed to equitable, relief. The court did not attempt to determine, more generally, the "gist" of those cases as a whole or whether, at common law, a court of equity that entertained them would have had jurisdiction to grant the relief requested.[17]

As we have explained, before the merger of law and equity, this court cited

---

[17] *Cornelison* also does not foreclose the *Dairy Queen* approach. In that case, in determining whether a jury trial was constitutionally required, the court considered whether the particular issue before the court would have been decided by a court at common law. The court did not focus on the gist of the case as a whole. 254 Or at 406 ("Analytically, it would seem that it should be the nature of the particular issue in the proceeding, rather than that of the entire proceeding, which should dictate whether this issue is to be tried with or without a jury.").

27

various reasons for upholding an equity court's exercise of jurisdiction over what could otherwise be considered legal claims, including the circuity and expense of two trials and the notion that a plaintiff who improperly joined equitable and legal claims had waived the right of jury trial. Because Oregon has eliminated the procedural distinctions between law and equity, there is no longer any necessity for or benefit in perpetuating that system. That is, with the merger of law and equity, there no longer is a risk of delay or expense associated with a second trial, and, therefore, there is no longer a need for equity courts to grant incidental or ancillary relief to avoid those risks. Similarly, there is no reason to apply waiver principles to enforce pleading rules that are no longer in effect.

In sum, it is neither necessary nor advantageous to courts or litigants to decide the substantive question of whether a party is entitled to a jury trial based on whether a case is "essentially" equitable in nature, or whether a court of equity would have had "incidental" jurisdiction to decide a legal issue as an adjunct to deciding an equitable issue in 1857. Rather, the right to jury trial must depend on the nature of the relief requested and not on whether, historically, a court of equity would have granted the relief had the legal issue been joined with a separate equitable claim. To reach a different conclusion would be to import into current practice procedures that may have been necessary at one time but that our legislature has long since abandoned. Instead, we conclude that Article I, section 17, and Article VII (Amended), section 3, of the Oregon Constitution do not guarantee a right to jury trial for claims or requests for relief that, standing alone, are equitable in nature and would have been tried to a court without a jury at common law. By the same token, in the absence of a showing that the nature of a

28

claim or request for relief is such that, for that or some other reason, it would have been tried to a court without a jury, those provisions do guarantee a right to jury trial on claims or requests that are properly categorized as "civil" or "at law."

With that understanding in mind, we turn to defendant's contention that he had a right to a jury trial on plaintiff's claim for monetary damages. As discussed, we look to the pleadings to ascertain the nature of the relief that plaintiff requested. Plaintiff filed a petition under ORS 30.866, alleging that defendant had engaged in behavior prohibited by that statute, and she sought three forms of relief, two of which are relevant on review: a stalking protective order enjoining defendant from engaging in certain conduct, and an award of compensatory money damages. ORS 30.866(1) ("A person may bring a civil action in a circuit court for a court's stalking protective order or for damages, or both * * *."); ORS 30.866(4) (plaintiff may recover special and general damages, punitive damages, and reasonable attorney fees and costs).

Defendant asserts that plaintiff's claim for compensatory money damages seeks relief that is legal, as opposed to equitable, in nature and that the constitutional right to jury trial therefore extends to that claim. Plaintiff does not argue otherwise, and she does not assert any other basis for concluding that her claim for compensatory money damages does not come within the ambit of Article I, section 17, or Article VII (Amended), section 3. Notably, plaintiff does not argue that the Court of Appeals was correct in concluding that plaintiff's monetary claim is unlike those customarily tried to juries at common law because it is "not merely an assault or battery claim by another name." *M. K. F.*, 236 Or App at 389. Rightly so. The Court of Appeals erred in

29

conditioning the right to jury trial on such a precise match between the elements of a current claim and those of a common-law predecessor. As we have explained, Article I, section 17, and Article VII (Amended), section 3, preserve the right to jury trial for claims that are properly categorized as "civil" or "at law." For the reasons that we have discussed, plaintiff's claim seeking monetary damage for injury inflicted fits within those terms, even if it does not have a precise historical analog. We therefore hold that the Court of Appeals erred in reaching a contrary conclusion.

The final issue for our consideration is the terms of our order on remand. As discussed above, we have rejected defendant's challenges to the merits of the trial court's issuance of a stalking protective order, and defendant did not seek review in this court of the part of the trial court's order awarding attorney fees. We therefore affirm the parts of the Court of Appeals decision that affirm those two aspects of the trial court's judgment and do not disturb those two aspects of the trial court's general judgment. However, because we conclude that defendant was entitled to a jury trial on plaintiff's claim for compensatory money damages, we reverse the part of the Court of Appeals decision that affirms the trial court's ruling to the contrary. We also reverse the part of the trial court judgment that awards plaintiff compensatory money damages. We remand the case to the trial court for a jury trial on plaintiff's claim for compensatory money damages.[18]

---

[18]     Plaintiff is not, of course, required to pursue that request for relief on remand. Assuming that she will do so, however, we take this opportunity to mention a matter that may arise. Because the entire case was tried to the court and, therefore, the trial court decided plaintiff's requests for both the stalking protective order and

30

The decision of the Court of Appeals and the judgment of the circuit court are affirmed in part and reversed in part. The case is remanded to the circuit court for further proceedings.

---

compensatory damages, no question was presented about the order in which the court was required to proceed. Had the trial court permitted a jury to decide plaintiff's claim for compensatory damages, it arguably would have been necessary for the court to await the jury's determination of the facts before it decided whether to grant the stalking protective order. *See Dairy Queen*, 369 US at 472-73 ("only under the most imperative circumstances * * * can the right to a jury trial of legal trial issues be lost through prior determination of equitable claims"). On remand, the trial court may be asked to consider whether its entry of the stalking protective order or its findings of fact in support of that order will have any effect on defendant's right to have the jury decide plaintiff's claim for compensatory damages. Although that issue is not before us (and we do not decide it), the trial court may wish to consider the unique procedural circumstances present in this case. *See Holien v. Sears, Roebuck and Co.*, 298 Or 76, 98 n 9, 689 P2d 1292 (1984) ("The trial court's determination of the facts on the first [equitable] claim did not preclude the jury from weighing the evidence and deciding the facts on the second [legal] claim."); *Bishop v. Baisley*, 28 Or 119, 142-44, 41 P 936 (1895) (equity court defers to jury on factual questions).

31