Argued and submitted November 14, 2013, affirmed February 20, petition for review denied June 26, 2014 (355 Or 703)

MERRILL LYNCH COMMERCIAL FINANCE CORP.,
a Delaware corporation,
*Plaintiff-Respondent,*

*v.*

Mark S. HEMSTREET,
an individual;
Shilo Management Corporation,
an Oregon corporation;
*Defendants-Appellants,*

*and*

JDCK, LLC,
an Oregon limited liability company;
Troy Lodge, LLC,
an Oregon limited liability company;
and LSSR, LLC,
an Oregon limited liability company,
*Defendants.*

Washington County Circuit Court
C115161CV; A151708

323 P3d 361

Ridgway K. Foley, Jr., argued the cause for appellants. With him on the briefs were Charles R. Markley and Greene & Markley, P.C.

Teresa H. Pearson argued the cause for respondent. With her on the brief were Jeanne Kallage Sinnott and Miller Nash LLP.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

HADLOCK, J.

**HADLOCK, J.**

This case involves a large commercial debt that defendants Mark Hemstreet and Shilo Management Corporation owed to plaintiff. The facts are described in more detail below. In a nutshell, after defendants repeatedly defaulted on a commercial loan from plaintiff, they executed a confession of judgment that encompassed both (1) a money judgment in favor of plaintiff "and against defendants [Hemstreet and Shilo] jointly and severally," in an amount exceeding $5 million, and (2) judgments in favor of plaintiff foreclosing trust deeds on properties that secured the same debt.[1] The confessed judgment was entered in 2011, and plaintiff later issued writs of garnishment to various banks and corporate entities in an effort to recover the amount due. Defendants challenged one of the writs of garnishment and also moved generally to enjoin plaintiff from issuing garnishments or otherwise enforcing the money judgment "until after the real property securing the indebtedness has been sold in the manner provided by law, and the sheriff's return shows that there is a deficiency owing." The trial court issued an order rejecting defendants' challenge to the writ and denying their requested injunctive relief, ruling that plaintiff was "entitled to pursue all collection activity to enforce the [confessed judgment], including but not limited to writs of garnishment and execution, * * * notwithstanding that the execution sales of the mortgaged property have not yet been completed." On defendants' appeal, we affirm.

The material facts are undisputed, at least for purposes of this appeal. The debt at issue was created in 2000, when defendant Shilo Management Corporation and plaintiff entered into a multi-million dollar loan agreement that was secured by a financial asset security agreement and by defendant Hemstreet's personal guaranty.[2] A year later,

---

[1] Various other entities also were parties to the transactions involving the trust deeds and those entities also were named as defendants to this action and, initially, joined in the appeal filed by Hemstreet and Shilo. Those other defendants later voluntarily dismissed the appeal as to themselves, however, and Hemstreet and Shilo now are the only appellants. Accordingly, this opinion's references to "defendants" should be understood to refer only to Hemstreet and Shilo except where the context requires otherwise.

[2] Merrill Lynch Business Financial Services Inc. was the original lender; it subsequently assigned all of its interest in the loan agreement to plaintiff.

Shilo defaulted on the loan, which was restructured in 2003. As part of that restructuring, Hemstreet reaffirmed his personal guaranty. Limited liability companies managed by Shilo (the LLCs) furnished plaintiff with trust deeds on several parcels of real property as additional security for the loan.[3]

Shilo defaulted again in 2008, and again the loan was restructured. This time, defendants executed a confession of judgment under ORCP 73.[4] After another default in 2011, plaintiff submitted the confession of judgment to the trial court, which entered the judgment in September 2011. At that point, defendants owed plaintiff more than $5.5 million. The confessed judgment provides, in part:

> "IT APPEARING to the Court that defendants Mark S. Hemstreet, Shilo Management Corporation [and the LLCs] have made statements under oath in accordance with the provisions of ORCP 73 B authorizing entry of judgment by confession, * * * that the basis for the judgment is not a consumer transaction prohibited by ORCP 73 A(2) and that plaintiff is entitled to judgment against defendants Mark S. Hemstreet, Shilo Management Corporation [and the LLCs] it is hereby
>
> "ORDERED AND ADJUDGED as follows:
>
> "1.  Judgment is entered in favor of Merrill Lynch Commercial Finance Corp. ('MLCFC') and against defendants Mark S. Hemstreet and Shilo Management Corporation jointly and severally in the principal amount of $5,049,778.93, together with interest accrued through August 27, 2010, in the amount of $434,510.39, together with interest accruing on the principal amount on and after August 28, 2010, through the date of entry of judgment * * *, together with charges for appraisals and other miscellaneous costs of $17,000, plus plaintiff's reasonable

---

Judgment creditor Bank of America, N.A. is plaintiff's successor in interest, by merger. Although the interests of those three entities are not necessarily congruent in all respects, any distinctions do not matter for purposes of the analysis in this case. Accordingly, and for the convenience of the reader, we refer to the entities collectively and interchangeably as "plaintiff" in this opinion.

[3] According to the confessed judgment, described later in this opinion, Hemstreet also was an executor of one of those trust deeds.

[4] ORCP 73 provides in part, "Judgment by confession may be entered without action for money due in the manner prescribed by this rule." ORCP 73 A(1).

attorney fees, costs and disbursements through August 24, 2010, in the amount of $144,853.16; plus interest accruing on the sum of all the above-referenced items * * * from the date of entry of this judgment, until paid."

The confessed judgment also includes provisions foreclosing plaintiff's lien on four of the properties for which trust deeds had been executed. A representative example of those provisions follows:

"2. Judgment is further entered in favor of MLCFC as follows:

"a. The deed of trust executed and delivered by [one of the LLCs] to Merrill Lynch Business Finance Services, Inc. ('MLBFS'), on or about December 1, 2003, and recorded on January 20, 2004, in the real property records of Klamath County, Oregon * * * ('the Klamath Trust Deed'), and assigned from MLBFS to MLCFC, is declared a valid lien for the amount of MLCFC's judgment set forth in paragraph 1 above against real property situated in Klamath County, Oregon, legally described in the Klamath Trust Deed * * *.

"* * * * *

"c. MLCFC's lien of the Klamath Trust Deed on the Klamath Property is foreclosed and all interest that defendants had in the Klamath Property as of December 1, 2003, the date of the Klamath Trust Deed, and any right, title interest, lien, or claim of defendants and any successors to defendants had or claimed to have in the Klamath Property is hereby ordered to be sold by the sheriff of Klamath County, Oregon, in the manner provided by law."

The confessed judgment includes similar foreclosure provisions related to three other trust deeds.

In accordance with ORS 18.042(1),[5] the confessed judgment document also includes a separate section labeled as a money award. That award is for a principal amount of just over $5 million, plus interest, costs, and attorney fees.

---

[5] ORS 18.042(1) provides:

"The judgment document for a judgment in a civil action that includes a money award must contain a separate section clearly labeled as a money award. Any judgment in a civil action that includes a money award, but does not contain a separate section clearly labeled as a money award, does not create a judgment lien but may be enforced by any other judgment remedy."

The money award identifies defendants as the judgment debtors.

In 2012, the trial court issued writs of execution for the sale of three of the foreclosed properties. Those real properties were initially listed for sale at a total price of $1.65 million. The properties had not sold by the time the trial court issued the order that is the subject of this appeal.

In an effort to recover the more than $5 million owed on the confessed judgment, plaintiff issued writs of garnishment to various banks and corporate entities. Defendants challenged one of those writs, which had been issued to JPMorgan Chase Bank, contending that defendants' property was not subject to garnishment until after the real property that was secured by the trust deeds had been sold. Defendants also sought, more generally, to restrain plaintiff "from issuing garnishments and other process to enforce" the confessed judgment "personally against * * * defendants until such time as the real estate which is the subject of this foreclosure action has been sold pursuant to execution." Defendants argued that ORS 88.060, a provision of ORS chapter 88, which generally governs the foreclosure of mortgages and other liens on real property, required plaintiff to sell the foreclosed real properties first, "before any execution [could] issue to enforce the deficiency (if any) against the obligors." Plaintiff denied that ORS 88.060 imposed such a requirement under the circumstances of this case.

The trial court agreed with plaintiff, ruling that defendants had not proved an entitlement to restrain plaintiff from collecting on the money judgment:

"I find that [defendants have] not established that they're entitled to a restraining order on these provisions and the challenge is not well-taken. I am denying the challenge to the garnishments. The garnishments may go forward."

Accordingly, the trial court entered an order that included the following provisions:

"1. [Defendants'] motion for order to show cause why [plaintiff] should be restrained from issuing garnishments and other process to enforce its judgment is denied in its entirety. [Plaintiff] is entitled to pursue all collection

activity to enforce the Judgment, including but not limited to writs of garnishment and execution, concurrently or successively, notwithstanding that the execution sales of the mortgaged property have not yet been completed.

"2. [Defendants'] challenges to garnishments on the basis of ORS 88.060(2) and on the basis that property of [defendants] is not subject to garnishment until after execution sales of the mortgaged property have occurred are denied."

Defendants appeal from that post-judgment order pursuant to ORS 19.205(3).

In this court, defendants rely, as they did below, on ORS 88.060, which provides, in part:

"The judgment may be enforced by execution as an ordinary judgment for the recovery of money, except as in this section otherwise provided:

"* * * * *

"(2) When the judgment is also against the defendants or any one of them in person, and the proceeds of the sale of the property upon which the lien is foreclosed are not sufficient to satisfy the judgment as to the sum remaining unsatisfied, the judgment may be enforced by execution as in ordinary cases. * * *."

Defendants contend that the quoted provision means that a foreclosure judgment "may be enforced by execution as in ordinary cases" only after foreclosed property is sold and a deficiency remains:

"ORS 88.060(2) clearly provides that when the proceeds of a sheriff's sale are not sufficient to satisfy the creditor's judgment, the creditor may then (but only then) enforce its judgment 'as in ordinary cases.' Plainly said, the statute creates a mandatory condition precedent to enforcement of the judgment of foreclosure of a mortgage or a trust deed: a specific deficiency must remain after the foreclosure sale. Until the sale takes place, no one knows if a deficiency exists and, if it does exist, the amount of the deficiency. Once a known deficiency exists, and not before that time, the court may enforce the judgment against the debtor 'by execution as in ordinary cases.'"

In response, plaintiff first argues that this case is moot because the entity to which the single specifically challenged garnishment was issued—JPMorgan Chase Bank—has declared that it has no funds of defendants that are subject to garnishment. We reject that contention without extended discussion. In that regard, we note only that the scope of the order on appeal extends well beyond the specific challenge to the JPMorgan garnishment, the trial court having rejected defendants' general effort to restrain plaintiffs' collection efforts and having ruled that plaintiff is entitled "to pursue all collection activity" to enforce that judgment whether or not foreclosure sales have taken place.

On the merits, plaintiff contends that it is entitled to enforce its money judgment against defendants through writs of execution and writs of garnishment under various provisions of ORS chapter 18. That entitlement is not undermined by ORS 88.060(2), plaintiff argues, because the provision does not limit creditors' remedies in any respect. According to plaintiff, the statute merely specifies that joint mortgagees are not required to jointly execute on their respective deficiency judgments, even though they are required to jointly execute on the foreclosed real property. Plaintiff concludes that, because it was not aligned with any other creditor when it foreclosed on the properties in this case, ORS 88.060(2) does not apply to this situation.

So framed, the parties' arguments present a question of statutory interpretation. "When construing a statute, we examine the text of the statute in context, along with any relevant legislative history, to discern the legislature's intent." *State v. Thomas*, 257 Or App 770, 772, 308 P3d 270 (2013).

We begin our analysis by recognizing that—if the confessed judgment were simply a money judgment and did not include the foreclosure provisions—plaintiff would be entitled to pursue remedies under ORS chapter 18, including garnishment. That entitlement would follow from the uncontested fact that the confessed judgment includes a money award against defendants for the entire amount of the debt. *See, e.g.*, ORS 18.605(1)(a) (a debtor's garnishable property may be garnished for application against a money judgment that has been entered in circuit court).

The question then becomes whether, in light of the fact that the confessed judgment encompasses *both* that money judgment against defendants, as well as the foreclosures of real property, ORS 88.060 precludes plaintiff from enforcing the money judgment until the foreclosed properties are sold, as defendants contend. For the reasons set out below, we hold that ORS 88.060 does not have that effect.

To set the stage for our consideration of ORS 88.060, we first review ORS 88.010, which begins chapter 88 and which provides context for all that follows. It provides:

> "Except as otherwise provided by law, a lien upon real or personal property, other than that of a judgment, whether created by mortgage or otherwise, shall be foreclosed, and the property adjudged to be sold to satisfy the debt secured thereby by a suit. Except as provided in ORS 88.070 [related to purchase money mortgages], in addition to the judgment of foreclosure and sale, if a promissory note or other personal obligation for the payment of the debt has been given by the lien debtor or any other person as principal or otherwise, the court also shall enter a judgment for the amount of the debt against the person or persons. \* \* \*"

Thus, "ORS chapter 88 provides for the filing of a mortgage foreclosure 'suit.'" *Franklin v. Spencer*, 309 Or 476, 481, 789 P2d 643 (1990). Moreover, such a suit can result in a judgment that mandates both foreclosure of the mortgage and, when either the mortgagor or another party has undertaken a personal obligation for the underlying debt, a money judgment against that obligor. ORS 88.010. (The confessed judgment in this case includes both kinds of provision, as it forecloses four trust deeds against specific properties and imposes a money judgment against defendants based on their personal guarantees.)

We turn to ORS 88.060, which provides that foreclosure judgments "may be enforced by execution as an ordinary judgment for the recovery of money," except as otherwise provided in other parts of the statute. The first sentence of subsection (2) of the statute, on which defendants rely, provides, in part:

> "When the judgment is also against the defendants or any one of them in person, and the proceeds of the sale

of the property upon which the lien is foreclosed are not sufficient to satisfy the judgment as to the sum remaining unsatisfied, the judgment may be enforced by execution as in ordinary cases."

ORS 88.060(2).[6]

The plain text of that sentence describes a limited set of circumstances. Although the provision starts with the somewhat ambiguous reference to "the judgment," in context, we understand that reference to be to the type of judgment described in ORS 88.010 and to which the provisions of ORS chapter 88 generally apply, that is, foreclosure judgments. After referencing foreclosure judgments, ORS 88.060(2) goes on to describe a subset of those judgments— those that are "also against the defendants or any one of them in person." Two types of judgments fall within that category. First, a judgment of foreclosure may also include— before any foreclosure sale—a money judgment against the mortgagor or other debtor who has personally guaranteed the underlying debt. Such a judgment "is also against the defendants or any one of them in person." ORS 88.060(2). Second, ORS 88.060(2) applies to deficiency judgments that arise when a deficiency remains following a foreclosure sale. ORS 88.010 refers to that type of judgment, and the Supreme Court has explained that ORS 88.060(2), the predecessor of which was enacted in 1862,[7] was intended to give courts sitting in equity the authority to enter deficiency judgments following foreclosure sales—authority they otherwise would not have had before the legislature largely eliminated the procedural distinctions between actions at law and cases in equity in 1979. *Wright v. Wimberly*, 94 Or 1, 8, 184 P 740 (1919). *See also Foster v. Miramontes*, 352 Or 401, 419-20, 287 P3d 1045 (2012) (discussing historical law/equity distinction in Oregon).[8]

---

[6] We note that ORS 88.060 (and, therefore, our discussion in this opinion) does not govern creditors' remedies following the foreclosure of a purchase money mortgage, that is, a mortgage that "was given to a seller to secure the unpaid balance of the purchase price of real property." ORS 88.070(1)(a).

[7] An Act to Provide a Code of Civil Procedure, Or Laws 1862, ch V, § 413(2), p 108.

[8] We discuss the early statutes and the contextual significance of the law/equity divide in more detail later in this opinion.

In sum, the first sentence of ORS 88.060(2) applies to foreclosure judgments in which a money award against the defendants preexists a foreclosure sale as well as to those money judgments that come into existence only later, in the form of deficiency judgments. With respect to those judgments, the first sentence of ORS 88.060(2) applies, by its terms, only in one set of circumstances: when a foreclosure has resulted in "the sale of the property upon which the lien is foreclosed" and a deficiency remains. ORS 88.060(2). When that has occurred, the provision states that "the judgment may be enforced by execution as in ordinary cases." *Id.*

Thus, each pertinent aspect of the first sentence of ORS 88.060(2) is either descriptive (identifying the circumstances in which it applies) or permissive (allowing a creditor to take a specified action). No aspect of the provision is prohibitive. That is, the text of ORS 88.060(2) does not contain any words *prohibiting* a creditor who forecloses a lien from enforcing an existing money judgment unless and until a foreclosure sale is accomplished.

Consideration of a related statute in chapter 88 provides additional context, as it demonstrates that the legislators who enacted the provisions in 1862 could use explicitly prohibitive terms when they intended a statute to have that effect. That statute, ORS 88.040, sets out the consequences when a creditor chooses to pursue an action other than foreclosure against a debtor whose debt is secured by a lien:

> "During the pendency of an action for the recovery of a debt secured by any lien mentioned in ORS 88.010, a suit cannot be maintained for the foreclosure of the lien, nor thereafter, unless judgment is given in such action that the plaintiff recover the debt or some part thereof, and an execution thereon against the property of the defendant is returned unsatisfied in whole or in part."

The legislature's choice to phrase ORS 88.040 in prohibitory terms, specifying that a creditor "cannot" pursue foreclosure "unless" certain circumstances exist, reinforces our view that the absence of similar words in ORS 88.060(2) is significant.[9]

---

[9] The predecessor statutes of ORS 88.040 and ORS 88.060 were enacted simultaneously in 1862 and their phrasing has not materially changed since

We conclude, having considered the text of ORS 88.060(2) in the context of related statutes, that the provision's first sentence identifies a particular set of circumstances—when a deficiency remains after a foreclosure sale and the creditor is entitled to collect that deficiency because of the debtor's personal liability for the debt—and authorizes a creditor to enforce the judgment "by execution as in ordinary cases" when those circumstances exist. ORS 88.060(2) does not state that creditors may utilize remedies like garnishment *only* in those circumstances, as defendants contend.

The historical context in which ORS 88.060(2) was enacted confirms that interpretation of the statute. As noted earlier in this opinion, the predecessor statutes to many of the provisions now included in ORS chapter 88 were enacted in 1862, when Oregon courts distinguished between actions at law and suits in equity. *See* An Act to Provide a Code of Civil Procedure, Or Laws 1862, ch V, §§ 410-18, pp 106-09; *see generally Foster*, 352 Or at 419-20 (discussing historical law/equity distinction in Oregon). In *Wright*, the Supreme Court explained that one legislative goal in adopting those provisions was to prevent a creditor from having to pursue a separate action at law if the proceeds from a foreclosure sale did not satisfy the entirety of an underlying obligation. The court first noted that, in some jurisdictions, courts sitting in chancery had "held that in suits to foreclose mortgages no personal recovery against a mortgagor could be rendered, even if the property hypothecated was insufficient to pay the debt secured, since a judgment for such deficiency could only be given in an action at law." 94 Or at 8. In those jurisdictions, if "the proceeds of a sale of the mortgaged property were insufficient to discharge the entire debt thus secured," the creditor was required "to maintain a suit in equity to foreclose the mortgage, and also an action at law to obtain the remainder, thereby incurring the costs and disbursements incident to two trials." *Id.* The court held that the provisions now codified in ORS chapter 88 were enacted to eliminate that requirement, allowing a court sitting in equity, "in decreeing the foreclosure of a mortgage, also to

then. *See* An Act to Provide a Code of Civil Procedure, Or Laws 1862, ch V, §§ 413, 416, pp 107-08.

award a conditional recovery of the deficiency, if any should be found to exist, after a sale of the mortgaged premises and an application of the proceeds to the debt secured." *Id.*; *see also German Loan Society v. Kern*, 38 Or 232, 245, 63 P 1052 (1901) (*Kern II*) (under the predecessor statute to ORS 88.060, a court sitting in equity could enter a single decree that both foreclosed a mortgage and created a deficiency judgment against the mortgagor personally).[10]

    *Wright* involved a purchase money mortgage and, therefore, its discussion of the predecessor statute to ORS 88.060(2)—the statute that allows a court sitting in equity to also "award" a deficiency judgment when it forecloses on other kinds of liens against property—is *dictum*. Nonetheless, that discussion is helpful because it explains why the legislature deemed it necessary to specifically authorize a court that entered a foreclosure judgment to also "enter a judgment for the amount of the debt against [any] person or persons" who had undertaken a personal obligation for that debt, ORS 88.010, and to authorize the creditor to enforce a judgment "by execution as in ordinary cases" in those circumstances, ORS 88.060(2). Thus, the historical context in which ORS 88.060(2) was enacted provides further support for our conclusion that ORS 88.060(2) only *authorizes* particular actions after a foreclosure sale has occurred, and does not limit creditors' remedies in other circumstances.

    To sum up: the first sentence of ORS 88.060(2) authorizes entry of a deficiency judgment, following a foreclosure sale, against a debtor that has guaranteed or otherwise personally obligated itself to pay the underlying debt. It also specifies that such a deficiency judgment "may be

---

[10] In *Kern II*, the Supreme Court addressed a situation in which a plaintiff foreclosed on a mortgage that the defendants had given to secure a debt. *See German Loan Society v. Kern*, 38 Or 232, 234, 62 P 788 (1900) (*Kern I*). Proceeds from sale of the foreclosed property did not entirely cover the debt, so the trial court entered a deficiency judgment. *Kern II*, 38 Or at 244. In those circumstances, the Supreme Court stated, the predecessor to ORS 88.060(2) "provided that such decree must be enforced first by a sale of the property adjudged to be sold; then, if the proceeds thereof should be insufficient, the decree, as to the sum remaining unsatisfied, may be enforced by an execution, as in ordinary cases." *Id.* at 245. That statement of what "must be enforced first" does not apply here, where the confessed money judgment against defendants was entered together with the confessed foreclosure judgments and is not a deficiency judgment that came into existence only following a foreclosure sale.

enforced by execution as in ordinary cases." ORS 88.060(2). However, the provision does not apply when no foreclosure sale has occurred, and it does not limit the ability of creditors to collect on existing money judgments. Consequently, ORS 88.060(2) does not prevent a creditor that has a judgment encompassing both a money award based on debtors' personal obligations *and* foreclosure provisions from collecting on the money judgment before any foreclosure sale has occurred. In this case, defendants confessed judgment against themselves personally for the entire amount of the debt simultaneously with confessing that plaintiff was entitled to foreclose on the properties described in the confessed judgment. ORS 88.060(2) did not require that those foreclosed properties actually be sold before plaintiff could collect on the money judgment.

Affirmed.