Argued and submitted March 18, decision of Court of Appeals and limited
judgment of circuit court affirmed July 1, 2021

DEEP PHOTONICS CORPORATION,
a Delaware corporation,
*Plaintiff,*

*v.*

Joseph G. LaCHAPELLE et al.,
*Defendants.*

James FIELD
and Joseph G. LaChapelle,
*Respondents on Review,*

*v.*

Dong Kwan KIM,
*Petitioner on Review,*

*and*

DAEHONG TECHNEW CORPORATION,
a Korean corporation, et al.,
*Third-Party Defendants.*

(CC C114435CV) (CA A158705) (SC S067853)

491 P3d 60

Shareholders Joseph LaChapelle and James Field (plaintiffs) brought claims on behalf of Deep Photonics Corporation (DPC) against three of DPC's directors (defendants). The case was tried to a jury, which found, among other things, that defendants breached their duty of care to DPC and its shareholders. The Court of Appeals affirmed, holding that the trial court did not err in allowing the claims to be tried to a jury and that the trial court did not abuse its discretion in denying defendants' midtrial request to raise and rely on a provision in DPC's certificate of incorporation to exculpate them from damages for breaches of the duty of care. *Held*: The case was properly tried to a jury and the trial court did not err in denying defendants' motion to assert the exculpation defense.

The decision of the Court of Appeals and the limited judgment of the circuit court are affirmed.

En Banc

On review from the Court of Appeals.*

_____
* Appeal from Washington County Circuit Court, Donald R. Letourneau, Judge. 303 Or App 699, 466 P3d 660 (2020).

Kevin H. Kono, Davis Wright Tremaine LLP, Portland, argued the cause and filed the briefs for petitioner on review. Also on the briefs was P. Andrew McStay, Jr., Portland.

Jeff S. Pitzer, Pitzer Law, Portland, argued the cause and filed the brief for respondents on review. Also on the brief was Charles J. Paternoster, Parsons Farnell & Grein, LLP, Portland.

Cody Hoesly, Larkins Vacura Kayser LLP, Portland, argued the cause for respondents on review and filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

BALMER, J.

The decision of the Court of Appeals and the limited judgment of the circuit court are affirmed.

**BALMER, J.**

In this shareholder derivative action, we consider two issues: first, whether the breach of fiduciary duty claims brought by shareholders Joseph LaChapelle and James Field (plaintiffs) on behalf of Deep Photonics Corporation (DPC) against DPC directors Dong Kwan Kim, Roy Knoth, and Bruce Juhola (defendants) were properly tried to a jury, rather than to the court; and, second, whether the trial court erred in denying defendants' motion, made during trial, to amend their answer to assert an affirmative defense against one of the claims in the complaint based on an "exculpation" provision in DPC's certificate of incorporation. For the reasons set out below, we conclude that the case was properly tried to the jury and that the trial court did not err in denying defendants' motion to assert the exculpation defense. We therefore affirm the decision of the Court of Appeals and the limited judgment of the trial court.

The underlying facts of this dispute among officers, directors, and shareholders of DPC are complicated and were contested at trial. The legal issues before us on review, however, do not require a recitation of DPC's corporate history. As relevant here, DPC brought an action against LaChapelle and Field, who had helped found DPC and were officers and shareholders; LaChapelle and Field answered and also filed a third-party complaint against defendants, a corporation controlled by Kim, and others. The third-party complaint included direct claims by plaintiffs and derivative claims that they brought on behalf of DPC. DPC's initial claims against LaChapelle and Field were dismissed or otherwise resolved, and the third-party claims by LaChapelle and Field against certain other defendants were dismissed or severed. LaChapelle's and Field's direct claims against defendants and the corporation controlled by Kim were dismissed before trial. Plaintiffs' derivative claims on behalf of DPC were tried to a jury, which found in favor of plaintiffs and against defendants Kim, Juhola, and Knoth. The jury awarded plaintiffs $10 million, which it allocated among those defendants, and the trial court entered a limited judgment based on the jury verdict.

Kim appealed the limited judgment, raising a number of assignments of error, and plaintiffs filed a contingent cross-appeal challenging certain trial court rulings. The Court of Appeals affirmed the limited judgment, and, accordingly, did not reach plaintiff's cross-appeal. *Deep Photonics Corp. v. LaChapelle*, 303 Or App 699, 466 P3d 660 (2020). We allowed Kim's petition for review of the Court of Appeals decision.

## I.   RIGHT TO A CIVIL JURY TRIAL

We begin with the dispute over the trial court's submission to a jury of plaintiffs' claim against defendants for money damages. Article I, section 17, of the Oregon Constitution provides: "In all civil cases the right of Trial by Jury shall remain inviolate."[1] On review, Kim's central argument is that the trial court erred in interpreting Article I, section 17, to require a jury trial on plaintiffs' claims against him and the other defendants. He asserts that plaintiffs' shareholder derivative claim is an equitable claim that, at the time Oregon adopted its constitution, would have been tried to the court and not to a jury. He further argues that historical practice in this and other states supports his understanding that the civil jury trial right set out in Article I, section 17, applied only to civil cases that were considered "at law" in 1857, where a jury trial was available, and not to cases that were "in equity," where a jury was not available. Kim asserts that this court's more recent cases continue to adhere to that distinction.

Plaintiffs respond that Oregon cases interpreting Article I, section 17, have examined the nature of a plaintiff's "claim" against a defendant and of the "relief" that the plaintiff seeks in order to determine whether the specific

---

[1] Plaintiffs also rely on Article VII (Amended), section 3, of the Oregon Constitution, which, separately from Article I, section 17, provides that "[i]n actions at law, where the value in controversy shall exceed $750, the right of trial by jury shall be preserved." Kim argues that the explicit reference in Article VII (Amended), section 3, to actions "at law" makes it particularly clear that that provision does not apply to equitable claims, such as plaintiffs' shareholder derivative claim for damages. Because we agree with plaintiffs that Article I, section 17, guarantees a jury trial on the claims at issue here, we need not and do not express an opinion as to how the different wording of Article VII (Amended), section 3, might affect that provision's applicability here or in other cases.

"claim" brought or "relief" sought is more properly characterized as legal or equitable for purposes of the jury trial right. Plaintiffs argue that our cases support their position that the jury trial right is not limited to those civil actions that were tried to juries in 1857 and that the elimination of the historic procedural distinctions between proceedings in law and equity further undercuts the formalistic application of the traditional divide between actions at law and suits in equity.[2] Plaintiffs recognize that certain kinds of proceedings, including shareholder derivative actions, are often said to be "equitable" in nature. They contend, however, that under the proper construction of Article I, section 17, set out in *M. K. F. v. Miramontes*, 352 Or 401, 287 P3d 1045 (2012), their shareholder derivative claim for money damages resulting from defendants' breach of fiduciary duty comes well within the scope of the jury trial right.

A.   *This Court's Decision in* Miramontes

Both parties contend that this court's decision in *Miramontes* essentially resolves this case in their favor. We agree that *Miramontes* provides helpful guidance as to the application of the civil jury trial right, but it does not answer the specific question presented in this case. *Miramontes* involved a new statutory cause of action, *id.* at 407, rather than a common-law claim of long standing like the one at issue here. Additionally, as the parties' arguments demonstrate, some key terms in *Miramontes* have multiple possible meanings that did not make a difference in that case but that are salient in resolving this dispute. For that reason, we begin by reviewing *Miramontes* to understand the extent to which it directs our analysis of the jury trial right in this case.

In *Miramontes*, the plaintiff brought an action under the anti-stalking statute, ORS 30.866. *Id.* at 403. Based on the defendant's knowing and repeated unwanted sexual conduct towards the plaintiff, she sought both a stalking protective order and money damages as permitted under

---

[2] The Oregon Rules of Civil Procedure were adopted in 1979. ORCP 2 provides, in part, that "[a]ll procedural distinctions between actions at law and suits in equity are hereby abolished, except for those distinctions specifically provided for by these rules, by statute, or by the Constitution of this state."

the statute. *Id*. The trial court issued a protective order against the defendant and also awarded the plaintiff money damages. *Id*. No party disputed that the plaintiff's request for a protective order enjoining the defendant from engaging in certain conduct towards her was properly a matter for the court. *Id*. at 414 (parties agree that stalking protective order is a form of injunctive relief and therefore "equitable in nature" and not subject to jury trial right). The defendant, however, argued that he had a constitutional right to a jury trial on the plaintiff's related claim for damages for lost sick and annual leave, lost wages, and counseling expenses.

This court agreed with the defendant. Following earlier Oregon cases, the court rejected the plaintiff's argument that the jury trial right could not apply to a claim for damages under the anti-stalking statute because ORS 30.866 was "a newly created statutory claim, providing entirely new remedies," rather than a common-law claim that existed when the Oregon Constitution was adopted in 1857. The court held that cases such as *State v. 1920 Studebaker Touring Car et al.*, 120 Or 254, 251 P 701 (1927), had established that "the relevant inquiry is not whether a newly created statutory claim existed at common law, but whether, because of its nature, it falls 'within the guarantee of the Constitution' to a jury trial." *Miramontes*, 352 Or at 409 (internal citation omitted). Similarly, the court rejected the plaintiff's contention that the dispositive question was whether the anti-stalking statute had established a claim that was, "in essence, a claim in equity" that, had it existed in 1857, would have been tried to the court without a jury. *Id*. at 425.

In reaching those conclusions, the court reviewed in detail its earlier cases, the historical origins of the division between law and equity, the challenge to courts in resolving cases that had both legal and equitable claims or that sought both legal and equitable relief, and the "merger" of law and equity in Oregon in 1979 with the adoption of the Oregon Rules of Civil Procedure, *id*. at 409-25, which eliminated "[a]ll procedural distinctions between actions at law and suits in equity," *id*. at 421. The court followed the approach taken by the United States Supreme Court in *Dairy Queen, Inc. v. Wood*, 369 US 469, 82 S Ct 894, 8 L Ed 2d 44 (1962), which "focused on the *nature of the relief requested* and recognized

that the plaintiff's request for a money judgment raised an issue that was unquestionably legal." *Miramontes*, 352 Or at 417 (emphasis added) (citing *Dairy Queen*, 369 US at 477-80). In *Miramontes*, we read *Dairy Queen* as holding that, even if equitable issues are the "basic" issues in the case, the parties "had a right to a jury trial on the legal issue." *Miramontes*, 352 Or at 417. Consistent with *Dairy Queen*, we rejected the idea that "a court should decide the right to jury trial based on an historical analysis of whether the case as a whole would have been tried at law or in equity when the constitution was enacted." *Miramontes*, 352 Or at 418.

In light of the elimination of the procedural distinctions between law and equity in 1979, and consistent with Oregon cases decided since that time, *Miramontes* held that it was "neither necessary nor advantageous to courts or litigants to decide the substantive question of whether a party is entitled to a jury trial based on whether a case is 'essentially' equitable in nature." *Id.* at 425. Rather, as the Supreme Court had held in *Dairy Queen*, the right to a jury trial turns on whether the "claims or requests for relief" or the "nature of a claim or request for relief" are such that the particular "claim" or "request for relief" would have been "tried to a court without a jury at common law" or, instead, would have been tried to a jury. *Miramontes*, 352 Or at 425. Moreover, the court reaffirmed its holding in *Studebaker* that the constitutional right to a civil jury trial was not limited to claims that had existed before the adoption of the constitution, but "extended to cases of like nature," *Miramontes*, 352 Or at 409, including the claim for money damages created by the anti-stalking statute, *id.* at 426. Based on that analysis, this court had little trouble concluding that the plaintiff's claim for compensatory money damages sought "relief that is legal, as opposed to equitable, in nature and that the constitutional right to jury trial therefore extends to that claim." *Id.*

B.  *The Parties' Arguments Based on* Miramontes

Kim argues that *Miramontes* does not support plaintiffs' argument that they had a right to a jury trial on their derivative claim for breach of fiduciary duties and, indeed, that *Miramontes* is consistent with Kim's proposed

"bright-line rule that no right to jury trial exists as to equitable claims tried to the court when the constitution was adopted, irrespective of the nature of the relief sought." The premise of Kim's argument is incorrect. Although *Miramontes* did not address the precise question here, the opinion clearly rejected the narrow application of the jury trial right that Kim advocates.

First, as noted, the decision makes it plain that the jury trial right applies not just to common-law actions that were tried to a jury in 1857, but also to "cases of like nature." *Id.* at 409. That includes new statutory claims, such as the forfeiture statute in *Studebaker* and the right to seek compensatory damages under the anti-stalking statute in *Miramontes*. Kim seeks to distinguish those cases on the ground that the shareholder derivative claim here is not a "new" claim, but rather was a common-law claim that existed at the time of statehood. Nothing in *Miramontes*, however, purports to limit the further elaboration or expansion by the Oregon courts of common-law claims that existed in one form or another in 1857 or suggests that the jury trial right would not apply to such claims.[3] Second, Kim's argument seeks to resurrect the concept of the "essential" nature of a claim as equitable or legal (albeit without using that term) by looking at whether the action as a whole was considered "legal" or "equitable" at common law. If *Miramontes* did nothing else, it explicitly rejected that approach: "[I]t is neither necessary nor advantageous *** to decide the substantive question of whether a party is entitled to a jury trial based on whether a case is 'essentially' equitable in nature[.]"

---

[3] It is unsurprising, of course, that *Miramontes* did not address the application of the jury trial right to a *common-law* claim that existed in 1857, as that case concerned only a modern *statutory* claim. But our cases interpreting constitutional provisions make clear that the framers did not view the common law as "static or unchanging." *Horton v. OHSU*, 359 Or 168, 182, 376 P3d 998 (2016). Rather, "they would have understood that the common law was not tied to a particular point in time but instead continued to evolve to meet changing needs." *Id.* at 183. And they would have assumed that constitutional provisions would be interpreted in light of the evolving common law. In interpreting the "remedy" clause in Article I, section 10, for example, this court held that the framers did not intend to "limit the meaning of that clause to the concept of injury as it was defined in 1857." *Id.* Those cases, which we discuss in more detail below, suggest that developing case law regarding common-law torts or the evolution of new common-law rights and obligations would be subject to the same jury trial right analysis that this court adopted in *Miramontes*.

*Miramontes*, 352 Or at 425. Rather, based on earlier decisions and, critically, the merger of "law" and "equity" jurisdiction in 1979, the right to jury trial "must depend on the nature of the relief requested." *Id.* Third, contrary to Kim's assertion, *Miramontes* explicitly embraced the idea that the right to a jury trial on a particular issue often may turn on the nature of the *relief* that a party seeks. *Id.* This court there agreed with the parties that if the "plaintiff had sought only injunctive relief, her claim would have been equitable in nature, and the constitution would not provide a right to jury trial." *Id.* at 414. It was only the plaintiff's separate claim for money damages—a claim that the court, agreeing with *Dairy Queen*, described as "unquestionably legal," *Miramontes*, 352 Or at 417—that triggered the defendant's right to a jury trial on that claim. *Id.* at 426.

But Kim is correct in pointing out that neither in *Miramontes* nor in any other case has this court suggested that a party can bring its action within the civil jury trial right of Article I, section 17, simply by asserting that its claim seeks some form of monetary relief. Indeed, in *Miramontes* this court reaffirmed its earlier holding in *McDowell Welding & Pipefitting v. US Gypsum Co.*, 345 Or 272, 284-86, 193 P3d 9 (2008), that a claim for specific performance of a settlement agreement was for the court, rather than a jury, to decide, despite the fact that it sought the payment of a sum of money. *Miramontes*, 352 Or at 424. And nothing in *Miramontes* supports the idea that a party would be entitled to a jury trial on claims for traditionally equitable remedies such as injunctive relief, which require the exercise of discretion and the "balancing of a variety of considerations to reach a just outcome." *Deep Photonics*, 303 Or App at 708 (summarizing *Frankland v. City of Lake Oswego*, 267 Or 452, 479, 517 P2d 1042 (1973)). But the claim here for money damages for defendants' breach of their fiduciary duties, of course, does not seek injunctive relief of any kind, requires no judicial balancing or the exercise of discretion, and turns only on the jury's verdict as to liability and the amount of damages.

Much of the dispute between the parties boils down to what this court meant in earlier cases when it used the word "claim" or "claims" to describe the issues that can be

decided by a court and those that are subject to the jury trial right. As noted, Kim argues that plaintiffs' shareholder derivative "claims" originated as equitable "claims" and were tried to the court at the time that the constitution was adopted and, therefore, that the trial court erred in allowing those claims to go to a jury. In his view, this was a "single equitable suit that cannot be separated into 'legal and equitable' claims." Plaintiffs counter that *Miramontes* adopted the Supreme Court's "issue by issue" approach set out in *Dairy Queen* and that that approach is to consider separately the different "claims for relief" or "requests for relief" in the action to determine which "claims" should be decided by the trial judge and which by a jury.

Kim's argument draws some plausibility from a passage in *Miramontes* where this court stated that no jury trial right attaches to "claims or requests for relief that, standing alone, are equitable in nature and would have been tried to a court without a jury at common law." 352 Or at 425. But the word "claim" is used in several different ways in our cases and rules. Sometimes "claim" is used to refer to the substantive legal basis for a cause of action, regardless of the relief sought. *See* ORCP 21 A(8) (permitting motion to dismiss a complaint for "failure to state ultimate facts sufficient to state a claim"). The parties here refer repeatedly to "newly created claims," a "shareholder derivative claim," a "breach of fiduciary claim," and a "common law claim"—all of which can mean a substantive legal right or ground for relief based on certain facts. Those uses of "claim" may—but need not—*also* specify the nature of the specific relief that is sought or permitted as a remedy for a plaintiff's successful action on a claim.

But other common uses of the word "claim" are more closely tied to a particular remedy or "claim for relief," not just to the statutory or common-law basis for a cause of action, and may require specification of the remedy being requested. ORCP 18, for example, requires "[a] pleading which asserts a *claim for relief*" to contain "[a] plain and concise statement of the ultimate facts constituting a *claim for relief*," ORCP 18 A (emphases added), *and* "[a] demand *of the relief* which the party *claims*," ORCP 18 B (emphases added). Similarly, ORCP 13 A states that "pleadings are the

written statements by the parties of the facts constituting their respective *claims*" (emphasis added), clearly assuming that, as used in that rule, the word "claims" subsumes and requires a statement of the "demand of the relief that the party claims," required by ORCP 18, as well as allegation of facts that demonstrate the substantive legal basis for the claim. In a reminder of the merger of law and equity, ORCP 24 A provides that a "plaintiff may join in a complaint, either as independent or as alternate *claims*, as many *claims*, legal or equitable, as the plaintiff has against an opposing party." (Emphases added.) And, in ORS 18.005(16), the legislature defined "request for relief," for purposes of the statutes setting out the requirements for judgments, to mean, in part, "a claim * * * or any other request for a determination of the rights and liabilities of one or more parties in an action that a legal authority allows the court to decide by a judgment."

The foregoing indicates that "claim" can have the narrower definition of the substantive legal basis for a cause of action, apart from any particular relief being sought, as Kim argues. But it also shows that we routinely use "claim" interchangeably with "claim for relief" and "request for relief." Thus, in the Oregon Rules of Civil Procedure and in our cases, such as *Miramontes*, the word "claim" can mean the legal basis for a cause of action *or* the particular relief that a party seeks—or it can mean both the legal basis and the relief sought, together. In *Miramontes*, this court held that "the right to jury trial must depend on the *nature of the relief requested*." 352 Or at 425 (emphasis added). If the "claims or requests for relief" seek only equitable remedies, the case will be tried to the court, but the constitution guarantees a jury trial on "*claims or requests* that are properly categorized as 'civil' or 'at law.'" *Id.* (emphasis added). The court in that case plainly used the term "claim" not only in the narrower sense of the legal basis for the action that Kim focuses on, but also as including requests for different forms of relief. And when the "claim seek[s] monetary damage for injury inflicted," and is "properly categorized as 'civil' or 'at law[,]'" *id.* at 426, that claim is subject to a jury trial because such relief is "unquestionably legal," *id.* at 417.

More to the point, this court could not have reached the result that it did in *Miramontes* if it had adopted the position taken by Kim here. There, the plaintiff brought a "claim" under the anti-stalking statute, but she sought, as relevant here, two forms of relief: a protective order and an award of compensatory damages. *Id.* at 403. As discussed above, the court agreed with the parties that the plaintiff's request for an order enjoining defendant from engaging in certain conduct—an injunction, the quintessential equitable remedy—was properly tried to the court. *Id.* at 414. But this court held that the nature of the relief sought in the plaintiff's claim for money damages against the defendant resulting from his improper conduct towards her was an equally quintessential *legal* remedy and therefore should have been tried to the jury. *Id.* at 426.

C.   *Article I, Section 17, and Plaintiffs' Claims*

With that background, we return to the issue before us: whether the trial court erred in sending the claim for money damages in this shareholder derivative action to the jury. Kim's first argument is that shareholder derivative claims were first recognized in courts of equity and are still seen as essentially equitable; for that reason, he maintains, the civil jury trial right in Article I, section 17, does not apply to the claim here. As described above, in *Miramontes* this court extensively examined the question and expressly rejected the idea of determining a party's right to a jury trial based on whether the "gist" or the "essence" of the case was equitable or legal in nature. *Id.* at 415-25. As in *Miramontes*, we conclude that that argument, standing alone, is insufficient. Particularly after the elimination of any procedural differences between actions at law and suits in equity, we see no reason to adopt a blanket rule that, because shareholder derivative claims had their origins in the equity courts and were often referred to as "equitable" in nature, a party seeking money damages is not entitled to a jury trial.

Here, plaintiffs brought a derivative claim on behalf of DPC against certain officers and directors, arguing that they had breached their fiduciary duties to DPC in various ways. Plaintiffs sought money damages. Kim argues that shareholder derivative claims are equitable in origin and

would have been treated as equitable in Oregon at the time of statehood and not subject to a jury trial. But *Miramontes* instructs us instead to look at the "claims" and "requests for relief," and if the relief sought is in the nature of a "legal" claim—as was the request for money damages for injury inflicted in *Miramontes* and the request for money damages here—the parties have a right to a jury trial. We see no obvious difference between the claim for money damages here and the claim for money damages in *Miramontes*.

Kim is correct that shareholder derivative claims arose in courts of equity to allow a shareholder to bring a breach of fiduciary duty claim against directors—a claim that properly belonged to the corporation—because the law courts would not permit an action by a shareholder on behalf of the corporation. But that point does not further Kim's position. First, that argument essentially ignores the directive in *Miramontes* that we examine the "pleadings to ascertain the *nature of the relief* that [the] plaintiff requested" and determine whether that relief "is legal, as opposed to equitable, in nature and that the constitutional right to jury trial therefore extends to that claim." *Id.* at 425-26 (emphasis added). Second, it is difficult to see why the derivative nature of the shareholder's claim should make any difference in whether a common-law breach of fiduciary duty claim is tried to the court or to a jury. The actual holder of the claim was the corporation, and, if the corporation had brought the claim itself, it would have been entitled to a jury trial. The Supreme Court said exactly that more than 50 years ago in *Ross v. Bernhard*, 396 US 531, 532-33, 90 S Ct 733, 24 L Ed 2d 729 (1970):

> "We hold that the right to jury trial attaches to those issues in derivative actions as to which the corporation, if it had been suing in its own right, would have been entitled to a jury."[4]

---

[4] In *Ross*, the Supreme Court relied upon a now century-old precedent. It quoted Justice Holmes's opinion in *Fleitmann v. Welsbach Street Lighting Co.*, 240 US 27, 36 S Ct 233, 60 L Ed 505 (1916), where the court held that a shareholder derivative action seeking damages under the antitrust laws should be tried to a jury, because if the corporation had brought the case itself, "no one can doubt that its only remedy would be at law." *Id.* at 28. The court in *Fleitmann* understood that there were "cases in which the nature of the right asserted *** has led to the whole matter being disposed of in equity," but where the penalty sought

In reaching that result, the Supreme Court applied its decision in *Dairy Queen*, discussed above, which this court relied on in *Miramontes*. We, too, see the appropriate application of the jury trial question as focusing on the "nature of the relief sought," *Miramontes*, 352 Or at 424, rather than on the historical origins of shareholder derivative suits.[5] A shareholder derivative claim that seeks to enjoin a merger, remove a director, or declare a dividend seeks relief that requires the exercise of discretion, the balancing of competing interests, and nuanced business judgments. That relief has historically been the province of the court. But a claim seeking relief in the form of money damages for fraud, negligence, or breach of fiduciary duty historically has been considered legal in nature and, as the Supreme Court held in *Ross*, 396 US at 542, is subject to the jury trial right of the Seventh Amendment. We see no basis for reaching a different conclusion as to the jury trial right in Article I, section 17.

Finally, Kim argues that we should not follow *Dairy Queen*, *Ross*, or other decisions that, since the merger of law and equity, have held that constitutional jury trial rights, federal or state, permit jury trials in shareholder derivative cases seeking money damages. Kim quotes this court's statement that "whatever the right to a jury trial in a civil case meant in 1857, it has the same meaning today." *Lakin v. Senco Products, Inc.*, 329 Or 62, 69, 987 P2d 463, *clarified*, 329 Or 369, 987 P2d 476 (1999), *overruled on other grounds by Horton*, 359 Or 168. Relatedly, Kim asserts that it is improper for the court to "fragment" the common-law breach of fiduciary duty action into legal and equitable issues, based on the relief that a plaintiff seeks.

Both of those arguments contain a kernel of legitimate concern about constitutional interpretation and the development of the common law, but they assume a static

---

was triple damages, it was plain that the antitrust laws anticipated a jury trial. *Id.* at 28-29. Although *Fleitmann* was decided as an interpretation of the antitrust statutes, rather than the constitutional civil jury trial right, the logic is the same and is instructive here, both as to the shareholder-plaintiff standing in the shoes of—and therefore having the same jury trial right—as the corporation, and as to right to a jury trial when seeking money damages, while other, equitable remedies would be determined by the court.

[5] Indeed, this court in *Miramontes* cited that portion of *Ross* with approval. *Miramontes*, 352 Or at 418 n 14.

view of the law that is inconsistent with longstanding practice and the role of the judiciary. As to constitutional interpretation, the originalist statement in *Lakin* notwithstanding, we have in recent years adopted a more nuanced approach. In *Couey v. Atkins*, 357 Or 460, 490, 355 P3d 866 (2015), for example, we explained it this way:

> "[O]ur purpose is not to freeze the meaning of the state constitution to the time of its adoption, but is instead to identify, in light of the meaning understood by the framers, relevant underlying principles that may inform our application of the constitutional text to modern circumstances."

(Internal quotation marks omitted.) *See also Horton*, 359 Or at 187 ("remedy" clause in Article I, section 10, "did not freeze rights and remedies as they existed in 1857"). Similarly, our approach to the substance and procedure of the common law—including torts such as breach of fiduciary duty and procedural devices such as allowing shareholders to bring derivative claims on behalf of a corporation—is not static. As we stated in *Horton*, "when the framers drafted Oregon's constitution in 1857, they would not have viewed the common law as static or unchanging." *Id.* at 182. *See also id.* at 183 (constitutional framers "would have understood that the common law was not tied to a particular point in time but instead continued to evolve to meet changing needs").

Kim is correct that stability and consistency are critical aspects of constitutional interpretation and common-law decision-making. Our adherence to principles of *stare decisis* in both constitutional interpretation and common-law decision-making reflects those values. *See Farmers Ins. Co. v. Mowry*, 350 Or 686, 697-98, 261 P3d 1 (2011) ("[S]*tare decisis* is not mechanistic. Rather, *stare decisis* is a prudential doctrine that is defined by the competing needs for stability and flexibility in Oregon law."); *Couey*, 357 Or at 485 ("*Stare decisis* does not permit this court to revisit a prior decision merely because the court's current members may hold a different view than its predecessors about a particular issue. At the same time, *stare decisis* is not absolute.").

Our holding here, however, is not foreclosed by any prior constitutional or common-law case from this court, and, indeed, to reach the result that Kim seeks would require us

to disavow or severely limit several aspects of our decision in *Miramontes*. We decline to do so, not only out of respect for precedent, but because *Miramontes* adopts an approach to determining when remedies sought by a party will be tried to a jury or to the court that respects the different roles of those institutions and is reasonably straightforward to apply. The differences between what constitutes "equitable" and "legal" relief and the question of when a party is entitled to a jury trial under Article I, section 17, will continue to arise, and here we decide only the specific issue that this case presents. As to that issue, however, our confidence in the result is bolstered not only by *Miramontes* and other decisions from this court, but also by its consistency with closely analogous Supreme Court decisions, such as *Ross* and *Dairy Queen*. To the extent this decision expands the scope of the jury trial right under Article I, section 17, or alters the common law regarding shareholder derivative breach of fiduciary duty claims, those changes are marginal, incremental, and clearly foreshadowed by our prior decisions.

## II. EXCULPATION DEFENSE

We turn next to the issue of the exculpation provision found in DPC's certificate of incorporation as a Delaware corporation. There are two questions for us to address related to that provision: first, whether the exculpation provision is an affirmative defense that had to be raised in defendants' answer and, second, whether the trial court abused its discretion in denying defendants' motion to amend their answer to raise that defense. Kim argues that the exculpation provision did not have to be pleaded as an affirmative defense and that, if it did, the trial court abused its discretion in denying his motion to file an amended answer that would include such a defense.

### A. *Background*

Under Delaware corporation law—which the parties agree applies here—corporate directors "have a triad of primary fiduciary duties: due care, loyalty, and good faith." *Emerald Partners v. Berlin*, 787 A2d 85, 90 (Del 2001). Delaware statutes permit a corporation to include in its certificate of incorporation a "provision eliminating or limiting

the personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director ***." 8 Del Code § 102(b)(7).[6] Such provisions are sometimes referred to as "exculpation" provisions. But the statute permitting exculpation provisions has certain limitations and does not permit a corporation to limit or eliminate a director's personal liability for "any breach of the director's duty of loyalty," for "acts or omissions not in good faith," or for "transactions from which the director derived an improper personal benefit." *Id.*

DPC's certificate of incorporation contained an exculpation provision eliminating the liability of its directors for monetary damages "to the fullest extent permissible under the Delaware General Corporations Law." It is undisputed that that provision protected DPC's directors from being held personally liable for monetary damages for a breach of one of their fiduciary duties to the corporation— the duty of *care*. However, because of the limitations set out in Section 102(b)(7), that provision did not protect directors from personal monetary liability for certain other breaches of fiduciary duty, such as the duty of loyalty, or acts or omissions "not in good faith."

We briefly outline the conclusions reached by the courts below regarding the exculpation provision before reviewing in more detail the proceedings in the trial court that lead to our conclusion that Kim's arguments in this court are not well taken. Before the trial court, Kim argued that because DPC's certificate of incorporation contained an exculpation provision, plaintiffs could not recover monetary damages from defendants for their breach of fiduciary duty. As noted, the trial court rejected that argument, holding that reliance on the provision was an affirmative defense that defendants were required to assert in their answer and

---

[6] Section 102(b)(7) provides, in part:

"A provision eliminating or limiting the personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, provided that such provision shall not eliminate or limit the liability of a director: (i) For any breach of the director's duty of loyalty to the corporation or its stockholders; (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law; (iii) under § 174 of this title; or (iv) for any transaction from which the director derived an improper personal benefit. ***"

as to which they had the burden of proof. Because they had failed to raise that defense in their answer, the trial court determined that they could not rely on the provision. When defendants filed a motion during trial to amend their answer to add that defense, the trial court denied the motion on the ground that it would be prejudicial to plaintiffs. The Court of Appeals affirmed those rulings. *Deep Photonics*, 303 Or App at 715-19. We agree with the Court of Appeals.[7]

B.  *Proceedings Below*

The issues on review regarding the exculpation provision turn on when and how defendants sought to rely on that defense during the litigation. Underlying the timeliness issue is when defendants were on notice that plaintiffs were relying on defendants' alleged breaches of the duty of care, which could have been subject to the exculpation defense.

Plaintiffs' second amended third-party complaint, filed on October 21, 2013, was the operative pleading at trial and contained the following allegation:

> "[N]ot only did the corporation not actually benefit from the acts of [third-party defendants], the corporation was never intended to benefit from those acts. Rather, the actions were expressly designed to benefit the third-party defendants personally. The interested directors *failed to exercise due care* and committed corporate waste * * *."

(Emphasis added.) Other allegations in the complaint set out specific acts and omissions by defendants; asserted that defendants, "in addition to their lack of disinterest," made "grossly negligent decisions" because they did not "fully inform themselves" of various relevant facts; and claimed that those acts constituted "breaches of [defendants'] fiduciary duties."

---

[7] On review, plaintiffs make the alternative argument that the exculpation defense would not have been available to defendants even if it had been timely asserted, because the jury found not only that defendants had breached their duty of care—against which the defense might be valid—but also that defendants had breached their duty of loyalty, had not acted in good faith, and had derived improper personal benefits from various transactions. Like the Court of Appeals, because we conclude that the defense was not properly raised and that the trial court did not err in denying defendants' motion to amend their answer to assert the defense, we need not and do not consider plaintiffs' alternative argument. *See Deep Photonics*, 303 Or App at 713 n 7.

In their answer to the second amended complaint, filed on October 31, 2013, defendants did not assert the exculpatory provision as an affirmative defense. Trial was scheduled to begin some 10 months later, on September 3, 2014. Defendants filed a motion for summary judgment as to plaintiffs' claim for breach of fiduciary duty on July 3, 2014. Defendants argued that the actions at issue fell under the business judgment rule, which generally protects corporate directors from liability when they make business decisions in good faith and do so in the reasonable belief that they are acting in the best interests of the corporation and its shareholders. *Emerald Partners*, 787 A2d at 90-91. They argued that plaintiffs had not produced sufficient evidence to demonstrate gross negligence or fraud. Again, defendants raised no issue regarding Section 102(b)(7) or the exculpation provision in DPC's certificate of incorporation.

Defendants filed a reply brief in support of that summary judgment motion August 5, 2014, which mentioned, for the first time, the exculpation provision:

> "At times [plaintiff] LaChapelle appears to conflate the duty of loyalty with the duty of care. DPC's articles expressly waive monetary duty of care claims unless they rise to the level of bad faith. Such waivers are expressly permitted under Delaware law." (Citation omitted.)

Two days before trial, on September 1, 2014, defendants filed a motion *in limine*, seeking, among other things, to exclude evidence regarding any breaches of the duty of care:

> "Defendants move to exclude any evidence suggesting that the business decisions at issue here were made without due care, negligently, or through gross negligence under OEC 402 and 403 as irrelevant and confusing to the jury."

In that motion, defendants argued that the duties of care and loyalty are distinct and well-defined and that any introduction of evidence relating to the duty of care would confuse the jury without adding any probative value.

The court heard arguments on the motion *in limine* on the first day of trial, and plaintiffs raised two arguments in opposition to the motion. First, plaintiffs argued that

the exculpatory provision was an affirmative defense that defendants were required to, and had not, raised in their answer. Second, they argued that the exculpation provision does not preclude a plaintiff's claim against a director for a violation of the duty of care and a determination that the director violated that duty, but only a director's "personal liability *** for monetary damages" for such a violation. Plaintiff further argued that it is for the jury to "determine[] where on the spectrum of fiduciary duty a particular action falls"—whether a breach of the duty of loyalty or the duty of care. The mere existence of the exculpation provision in the certificate of incorporation, in plaintiffs' view, did not preclude them from presenting evidence of breaches of the duty of care or even a finding of liability for such breaches, but would prevent only an award of damages for such a breach. Plaintiffs argued:

> "So if we are arguing that a particular action was a breach of the duty of loyalty or the breach of the duty of care, which is sometimes considered a subset of—of loyalty, but it was also a breach of the—of the duty of due care. This *** becomes an issue that the jury really has to—has to decide.

> "We're going to say it was a breach of the duty of—of loyalty. They're going to say it's a breach of the duty of care. And so *** it's not something that damages can be awarded for, but it—it doesn't mean that there isn't liability. It just means there's no—there's no damages. But, again, this has been waived."

The court deferred a ruling on defendants' motion. Later, on September 15, 2014, the trial court denied the aspects of defendants' summary judgment motion that are relevant here but did not rule on the motion *in limine*.

On the last day of plaintiffs' case-in-chief, September 16, 2014, defendants sought to introduce DPC's certificate of incorporation as evidence. The following exchange occurred:

> "[DEFENDANTS:]   *** I want to offer *** the articles and amended articles of incorporation. It goes to the exculpatory clause issue.

> "[PLAINTIFFS:]   I guess I don't technically have an objection, although I'm not sure this is an issue for the jury. The exculpation clause is something that we're talking

about in terms of the instructions and then what would happen if they were to find breach of duty and due care.

"[DEFENDANTS:]   I just want them to be in the record, Judge.

"THE COURT:   That's fine. Well, right now, it's premature, 'cause we haven't resolved—

"[PLAINTIFFS:]   Right.

THE COURT:   —the legal dispute. But whether or not I'm—you know, I understand the plaintiff—you guys may plea bargain the—

"[PLAINTIFFS:]   Right.

"THE COURT:   —jury instructions and it may all be proper game, but we'll hold off until that's done, so—

"[PLAINTIFFS:]   Right.

"THE COURT:   *Right—right now your affirmative— that affirmative—that defense, affirmative or otherwise, isn't pled.* Remember?

"[DEFENDANTS:]   Sure, Judge. So we're going to—

"THE COURT:   *** The articles of incorporation might be relevant for some other purpose, but not for the exculpation clause yet, unless you guys have negotiated that away, that issue that we talked about on Friday.

"[PLAINTIFFS:]   We've been talking about that.

"THE COURT:   I'm sorry.

"[PLAINTIFFS:]   But I think it is premature.

"THE COURT:   Let's hold off on that until we get through that—that portion of it.

"[PLAINTIFFS:]   Yeah."

(Emphasis added.)

Later that day, at the close of plaintiffs' case, defendants moved for a directed verdict. In that motion, they argued that defendants were "entitled to [a] directed verdict to the extent [that] they seek damages for breach of the duty of care." Specifically, defendants contended that:

> "It is undisputed that the Deep Photonics articles contain [an exculpation] provision. As a result, plaintiffs cannot assert any claim for breach of the duty of care. To the extent plaintiffs seek to assert such a claim, defendants are entitled to a directed verdict."

Plaintiffs responded that a directed verdict was not the proper means to address that issue, and that it could be dealt with in the jury instructions instead. The court denied the motion for a directed verdict on the issue of damages for defendants' breach of the duty of care. The court explained that, despite notice of plaintiffs' allegation, defendants had failed to plead exculpation as an affirmative defense:

> "[*Defendants*] *said it wasn't pled, the duty of care wasn't pled.* That was one of your arguments. That's why you said you didn't raise [the exculpatory provision] as timely as you might have. *I reread the pleadings. To me, it's obvious that a duty of care is pled.* * * *
>
> "* * * * *
>
> "* * * I'm convinced that the duty of care is pled. That gets to the timeliness, which we haven't addressed. So we couldn't possibly be a directed verdict 'cause we haven't even gotten—you haven't even—*I think it is an affirmative defense.*
>
> "* * * * *
>
> "And I reread the stuff and the definition of affirmative defense is you have to prove something. *And you have to prove something, so it's an affirmative defense.*"

(Emphases added.)

The next day, September 17, 2014, defendants filed a motion to amend their answer to assert the following affirmative defense:

> "Deep Photonics Corporation's articles of incorporation exonerate directors from any liability for money damages for violation of the duty of care and, pursuant to that provision of the articles and 8 Del Code § 102(b)(7), third-party defendants cannot be held liable in this action for such damages."

Defendants argued that plaintiffs had not previously alleged a breach of the duty of care and, for that reason, their invocation of the exculpatory provision had not been necessary

earlier. They contended that the September 16 statement by the trial court, quoted above, was the first time that they became aware that the court intended to treat the claims at issue as allegations of breach of the duty of care, and that they filed their motion to amend as soon as possible following that revelation.

The court denied the motion to amend on September 18, 2014, stating:

"Obviously, timeliness is a factor. It's not the only factor. But the later it is, the less likely it is to be granted. It is true that it should be granted liberally as a general proposition, especially if it doesn't affect—if it doesn't prejudice the other side.

"The problem is, the timeliness does tend to affect the prejudice analysis. Now, not the discovery. I—I understand that. But the trial strategy and the manner of presentation are valid factors for the trial Court to consider.

"And I accept counsel's representation that it would have changed at least the tone of the presentation and the manner of which questions were asked, which ones weren't asked and how you frame the whole case.

"And so I—basically, I just think it's too late and those are the reasons. I'm thinking there's a prejudice. And it—and, you know, it could affect negotiations. As a (indiscernible), I don't think this case would have settled, no matter what, but—so I'll say that for the record, but I think at least in theory, it—it isn't a factor that should—should impact negotiations.

"It appears the parties were at loggerheads. And I can't imagine how you could settle this case. I'll just say that for the record, because of the parties' hatred for each other, quite frankly, and their posturing and postures, I should say anyway. All right. So good—for good or bad, that's my ruling ***."

The case was eventually submitted to the jury, which found that defendants had violated both the duty of loyalty and the duty of care and awarded money damages to plaintiffs on their derivative claim for defendants' breaches of fiduciary duty.

On appeal, defendant Kim assigned error to the denial of defendants' motion to amend their answer to add the exculpation provision as an affirmative defense, arguing—as relevant here—that the trial court erred in concluding that the exculpation provision was an affirmative defense that needed to be pleaded. The Court of Appeals disagreed, holding that "an exculpation provision functions like an affirmative defense," *Deep Photonics*, 303 Or App at 715, and that it therefore must be pleaded before it can be relied upon at trial, *id.* at 716. As to the trial court's denial of defendants' motion to amend their answer to add the exculpatory defense, the Court of Appeals applied ORCP 23 A,[8] which governs motions to amend pleadings, and case law from that court interpreting ORCP 23 A. It concluded that the trial court did not abuse its discretion. *Deep Photonics*, 303 Or App at 718. The Court of Appeals rejected Kim's factual assertion that defendants had moved to amend their answer as soon as they learned of plaintiffs' intent to try claims for breach of the duty of care, pointing out that the complaint itself—filed in October 2013—alleged a breach of the duty of care and that "breaches of the duty of care were at issue from th[at] time." *Id.* It was not until midtrial, the court said, that "defendants sought to amend their answer to raise a defense that they could, and should, have raised in their initial answer." *Id.* The court also agreed with the trial court that plaintiffs would be prejudiced if the motion to amend were allowed:

> "The trial court found that plaintiffs would have strategized about, shaped, and presented their case differently if defendants had actually raised the exculpation provision early in the case, rather than merely indicating a desire to rely on it, and the record supports that understanding. Even if this is a case in which the court could properly have exercised its discretion to allow a very late amendment, the court did not abuse its discretion by deciding not to allow it."

*Id.* at 719.

---

[8] In relevant part, ORCP 23 A provides that:

"[a] pleading may be amended by a party once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

C.  *The Exculpatory Provision as Affirmative Defense and
    the Motion to Amend*

On review, Kim argues that "pleading application of
an 'exculpation' provision is not required because an excul-
patory provision addresses damages—an element of plain-
tiffs' claim—and plaintiffs thus must plead non-exculpated
claims." As to the motion to amend, he asserts that "[a] trial
court must allow an amendment unless the opposing party
proves it will be unduly prejudicial in maintaining an action
or defense on the merits," rather than balance different fac-
tors identified in Court of Appeals' case law, "which are not
relevant except to the extent they show undue prejudice."

We begin with the question of whether defendants
were required to plead exculpation as an affirmative defense.
Under the Oregon Rules of Civil Procedure, "[e]very defense,
in law or fact, to a claim for relief in any pleading, whether
a complaint, counterclaim, cross-claim or third party claim,
shall be asserted in the responsive pleading thereto[.]"
ORCP 21 A. ORCP 19 B governs affirmative defenses specif-
ically, and requires that, "[i]n pleading to a preceding plead-
ing, a party shall set forth affirmatively *** any *** matter
constituting an avoidance or affirmative defense." Similarly,
Delaware law requires an affirmative defense to be pleaded;
if it is not, that defense is waived. *James v. Glazer*, 570 A2d
1150, 1153 (Del 1990). And, again similar to Oregon law,
Delaware law defines an affirmative defense as "'[a] defen-
dant's assertion raising new facts and arguments that, if
true, will defeat the plaintiff's *** claim, even if all alle-
gations in the complaint are true.'" *Emerald Partners*, 787
A2d at 91-92 (alterations in original) (quoting *Black's Law
Dictionary* 430 (7th ed 1999)). The parties here do not dis-
pute that affirmative defenses must be pleaded, but rather
they disagree as to whether exculpation pursuant to Section
102(b)(7) constitutes such an affirmative defense.

The Delaware Supreme Court has addressed the
nature of and proper procedure for pleading an exculpa-
tory provision a number of times. In *Emerald Partners*, that
court explained that "the adoption of a charter provision, in
accordance with Section 102(b)(7), bars the recovery of mon-
etary damages from directors for a successful shareholder

claim that is based exclusively upon establishing a violation of the duty of care." 787 A2d at 91. And the court went on to describe numerous cases holding that "exculpation afforded by a Section 102(b)(7) charter provision must be *affirmatively* raised by the director defendants," *id.* (emphasis in original) (citing *Malpiede v. Townson*, 780 A2d 1075, 1095 & n 70 (Del 2001)), primarily because such exculpation provisions are in the "*nature* of an affirmative defense," *Malpiede*, 780 A2d at 1092 (citing *Emerald Partners v. Berlin*, 726 A2d 1215, 1223 (Del 1999)) (emphasis added). In *Malpiede*, the Delaware Supreme Court held that, where a complaint states a due care claim, "the exculpation afforded by the statute must affirmatively be raised by the defendant directors." 780 A2d at 1095. *See also Emerald Partners*, 726 A2d at 1223-24 ("[T]he shield from liability provided by a *** provision adopted pursuant to 8 Del Code § 102(b)(7) is in the nature of an affirmative defense. Defendants seeking exculpation under such a provision will normally bear the burden of establishing each of its elements." (Internal citations and footnote omitted.)); R. Franklin Balotti & Jesse A. Finkelstein, 1 *Balotti and Finkelstein's Delaware Law of Corporations and Business Organizations* § 4:13 (2020) ("The preclusion of a duty-of-care claim pursuant to a Section 102(b)(7) charter provision should be raised as an affirmative defense. Accordingly, defendants seeking exculpation under such a provision will normally bear the burden of establishing each of its elements." (Internal quotation marks, footnotes, and alterations omitted.)).

As the Court of Appeals stated below, "[t]he requirement of pleading the exculpation provision is even clearer under Oregon law." *Deep Photonics*, 303 Or App at 717. ORCP 19 B requires that a party "set forth affirmatively *** any *** matter constituting an avoidance or affirmative defense." This court considers "evidence which does not directly controvert a fact necessary to be established by plaintiff" as a "new matter which must be pleaded as an affirmative defense." *Lasley v. Combined Transport, Inc.*, 351 Or 1, 17, 261 P3d 1215 (2011). Applying that rule, we agree with the Court of Appeals' conclusion that "defendants' reliance on the exculpation was a 'new matter'; it required evidence that '[did] not directly controvert a fact

necessary to be established by plaintiff.' Accordingly, it had to be pleaded." *Deep Photonics*, 303 Or App at 717 (alteration in original; internal citation omitted).

Having concluded that the defendants' reliance at trial on the exculpation provision constituted an affirmative defense that defendants were required to plead in their answer, we turn to the issue of defendants' motion to amend.

ORCP 23 governs amended and supplemental pleadings. Under ORCP 23 A, when a party may no longer amend a pleading as a matter of course, as was the case when defendants sought to amend their answer during trial, that party "may amend the pleading only by leave of court or by written consent of the adverse party[.]" Leave to amend "shall be freely given when justice so requires." *Id*. When consent of the court is required, the court retains discretion to deny the motion. *C.O. Homes, LLC v. Cleveland*, 366 Or 207, 215, 460 P3d 494 (2020). This court in *C.O. Homes* examined the contours of the trial court's discretion to allow a pretrial amendment:

> "[T]he gravamen of the inquiry is whether allowing a pretrial amendment would unduly prejudice the opposing party. *** In evaluating whether such prejudice exists, a court considers factors such as whether the party opposing the motion had a reasonable opportunity to research appropriate law, move against the pleading, avail himself or herself of discovery procedures, and prepare requested instructions. Generally, the further a case proceeds, the more reluctant the courts are to permit amendments. Another important consideration in assessing prejudice is whether the proposed amendment would change the claim for relief. A court may allow a motion to amend if there is no prejudice to the defendant and no material change in the substance of the complaint. By the same token, if a proposed amendment would change the claim for relief and prejudice the opposing party, a court may deny a motion to amend."

366 Or at 216-17 (internal citations, quotation marks, and alterations omitted).

As noted, the Court of Appeals here relied on case law from that court in determining whether defendants' motion to amend should have been allowed. It cited *Sanford*

*v. Hampton Resources, Inc.*, 298 Or App 555, 447 P3d 1192, *rev den*, 366 Or 64 (2019). *Sanford*, in turn, followed a test originally articulated in *Ramsey v. Thompson*, 162 Or App 139, 145, 986 P2d 54 (1999), *rev den*, 329 Or 589 (2000), where the Court of Appeals identified four factors that should be considered in applying ORCP 23 A.[9] Kim argues that the *Ramsey* test is inconsistent with our recent decision in *C.O. Homes* because it does not explain how to weigh the different factors it identified and fails to give primacy to the question of prejudice, as this court did in *C.O. Homes*. Kim argues that this court should address—and reject—the *Ramsey* test for those reasons.

In this case, however, we need not determine whether the various *Ramsey* factors or the *Ramsey* test itself conflict with *C.O. Homes*. Applying this court's decision in *C.O. Homes*, we conclude that the trial court did not abuse its discretion in denying defendants' motion to amend. Kim is incorrect in arguing that the trial court predicated its decision on the timing of the motion to amend, without adequately considering prejudice. Kim points to the trial court's statement—"I just think it's too late"—to support his argument that the trial court failed to consider prejudice adequately. In doing so, however, Kim takes the trial court's comment out of context, as demonstrated in the trial court's explanation of the reasons for its ruling that we set out above.

Immediately following the lateness comment, the court found explicitly that there *was* prejudice to the party opposing the motion—plaintiffs—in that the exculpation issue would likely have impacted trial preparation and trial strategy. As the Court of Appeals explained:

> "The trial court found that plaintiffs would have strategized about, shaped, and presented their case differently if defendants had actually raised the exculpation provision early in the case, rather than merely indicating a desire to rely on it, and the record supports that understanding."

---

[9] Those four factors are as follows: "(1) the proposed amendment's nature and its relationship to the existing pleadings; (2) the prejudice, if any, to the opposing party; (3) the timing of the proposed amendment; and (4) the colorable merit of the proposed amendment." *Sanford*, 298 Or App at 577.

*Deep Photonics*, 303 Or App at 719. Moreover, the trial court viewed the timeliness issue as directly implicating prejudice as well: because of the length of the proceedings, the broad discovery, and the extensive trial court record, the fact that defendants did not raise this affirmative defense until after the close of plaintiffs' evidence meant that plaintiffs had no opportunity to modify their theory of the case or their presentation of evidence based on the new affirmative defense. That rationale is entirely consistent with this court's observation in *C.O. Homes* (with apparent approval) that, "[g]enerally, the further a case proceeds, the more reluctant the courts are to permit amendments." 366 Or at 216. The trial court did not abuse its discretion in concluding that the untimeliness of a defense motion made midtrial contributed to the key inquiry regarding prejudice to the party opposing the motion.

Kim's argument that the trial court blindly applied the *Ramsey* test and that the resulting denial of his motion to amend is inconsistent with *C.O. Homes* is not supported by the record. The trial court properly considered the prejudicial effect of the motion to amend, exercised its discretion, and denied the motion. We cannot say that the trial court abused its discretion in reaching that decision.

The decision of the Court of Appeals and the limited judgment of the circuit court are affirmed.